## JACOBS *v.* WEISSINGER.

1. WITNESSES—ATTORNEY AND CLIENT—TESTIMONY OF ATTORNEY FOR CLIENT NOT COMMENDABLE.

   While the testimony of an attorney of record in a case is competent, his testifying in behalf of his client is not to be commended, since its consideration by the court is always a matter of embarrassment, because it is difficult to distinguish between the zeal of the advocate and the fairness and impartiality of a disinterested witness.

2. CANCELLATION OF INSTRUMENTS—DEEDS—WANT OF CAPACITY.

   In a suit to set aside a deed on the ground of the mental incapacity of the grantor, evidence *held*, sufficient to sustain the action of the court below in setting aside said deed.

Appeal from Washtenaw; Sample (George W.), J. Submitted April 20, 1920. (Docket No. 105.) Decided June 7, 1920.

Bill by Kate Jacobs and others against Fred J. Weissinger and another to set aside a deed on the ground of mental incompetency. From a decree for plaintiffs, defendants appeal. Affirmed.

*Arthur Brown* and *George J. Burke* (*E. R. Sunderland,* of counsel), for plaintiffs.

*Frank B. De Vine* and *Andrew J. Sawyer,* for defendants.

BROOKE, J. The bill of complaint in the case is filed for the purpose of setting aside a deed and is based upon two grounds, mental incapacity and undue influence. Upon the trial, the second ground was abandoned, but relief was granted upon the first ground stated and the instrument in question set aside.

The maker of the deed, J. George Kuster, died on January 8, 1919, and was at that time about 59 years of age. He was a widower without children, his heirs-at-law consisting of 4 sisters and 2 brothers and several children of a deceased brother and sister. The aggregate value of his estate was about $5,000, included in which was a house and lot on Hiscock street in the city of Ann Arbor, worth about $2,200. It is this property which is in dispute.

It appears from the record that Kuster had been sick a great deal of the time during the last 3 or 4 years of his life. On November 24, 1918, he was taken to the Maplehurst hospital, where he remained for about 6 weeks, when he died. He was suffering from a complication of diseases—a heart lesion, Bright's disease, hardening of the liver and dropsy. The deed in question was executed about 3 weeks after his entrance into the hospital and about 3 weeks before his death.

A great mass of testimony was introduced bearing upon the competency or lack of competency of Kuster at the time he executed the deed. Sixteen competent witnesses were called by the plaintiffs and 10 by the defendants. Testifying to the lack of mental capacity to make the deed in question, plaintiff called 2 doctors, 2 nurses and 12 personal friends and acquaintances of the deceased, while defendants, to sustain the deed, called 3 doctors, 1 nurse and 6 personal friends and acquaintances, including defendants' attorney. Of the medical testimony, that of Dr. Gates (who was in charge of the hospital in which deceased spent the last 6 weeks of his life) would appear to be entitled to greater consideration and credence, for the reason that during Kuster's last illness Dr. Gates was in constant attendance upon him, visiting him 3 or 4 times each day. Other physicians who testified had no such opportunity for observation as that enjoyed by Dr. Gates.

Dr. Gates testified, without reservation, that in his opinion—

"At no time was he in a condition to transact any business whatever while he was in the hospital. * * * I considered him incompetent all the time he was there."

The strongest testimony in support of the mental capacity of the deceased at the time the deed was executed was given by Mr. De Vine, who had for some years acted as legal adviser for the deceased, and who, upon the occasion of the making of the deed, acted as scrivener and witness. He testified:

"*Q.* Was he competent or incompetent to execute a deed?
"*A.* Absolutely, if he was not competent on that day, he was never competent in his lifetime."

He went into the circumstances surrounding the execution of the deed and the conversation had with deceased at that time with great particularity and unhesitatingly affirmed that at the time of the execution of the deed deceased was in full possession of all his mental faculties. It is but fair to say that the evidence given by Mr. De Vine receives very considerable support from that of others introduced by defendants upon the same point.

It is, we think, to be regretted that an attorney of record in the case should find it necessary to support the contention he is bound to make with his own testimony. It is a practice not to be commended, and, while such testimony is competent, its consideration by the court is always a matter of embarrassment, because it is difficult to distinguish between the zeal of the advocate and the fairness and impartiality of a disinterested witness. The practice has received judicial attention in many cases and has found scant approval. *Harkins' Succession*, 2 La. Ann. 923; *O'Don-*

*oghue* v. *Trust Co.,* 79 Ill. App. 263; *Granon* v. *Hart-shorne,* 10 Fed. Cas. No. 5,689, at page 966; *Ross* v. *Demoss,* 45 Ill. 447; *Edwards* v. *Edwards,* 63 N. J. Eq. 224 (49 Atl. 819); *Finlay* v. *Ritchie,* 12 Ont. L. Rep. 368.

It would profit no one to enter into a long discussion of the evidence contained in this rather voluminous record. It is sufficient to say that its perusal convinces us that the learned circuit judge reached the proper conclusion.

The decree is affirmed, with costs.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.