SCHAIBLE v MICHIGAN MUTUAL INSURANCE COMPANY

Docket No. 51752. Submitted February 3, 1982, at Detroit.—Decided May 5, 1982. Leave to appeal applied for.

Dennis L. Schaible brought an action against Michigan Mutual Insurance Company to recover no-fault automobile insurance benefits allegedly owed as a result of the death of plaintiff's wife in an automobile accident. Prior to trial the defendant paid $12,426 in settlement of plaintiff's claim for loss of support and $7,200, one-half of what plaintiff claims, for replacement services. The issues at trial were whether the payments were overdue when made and whether plaintiff was entitled to additional payment for replacement services. The jury awarded plaintiff an additional $7,200 for replacement services and $50,000 for mental anguish suffered because of the defendant's failure to pay the benefits on time. Judgment was entered on the jury verdict, and, in addition, the defendant was assessed costs, interest and attorney fees, St. Clair Circuit Court, Ernest F. Oppliger, J. Defendant appeals, alleging several errors. *Held:*

1. The trial court erred in ruling that the plaintiff could obtain damages for mental anguish for the alleged breach of the insurance contract. Such damages are not recoverable. Therefore, the award of damages for mental anguish is vacated.

2. The award of $7,200 for replacement services was proper only if the plaintiff expended that amount or became liable to pay that amount in addition to the $7,200 he was paid prior to trial. The plaintiff failed to meet his burden of proof on this matter. The award was improper, and the trial court erred in denying the defendant's motion for a directed verdict on this issue.

3. The trial court did not err in allowing the plaintiff's attorney to testify on the plaintiff's behalf. The attorney's testimony was necessary to prove the plaintiff's claims and the

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobile Insurance § 358.
   Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.
[2, 4] 7 Am Jur 2d, Automobile Insurance § 362.
[3] [No reference]

attorney was not allowed to represent the plaintiff for the remainder of the trial. An associate from the same law firm was allowed to represent the plaintiff. This was not error where withdrawal of the law firm during the trial would have worked a substantial hardship on the plaintiff.

4. The awards of interest and attorney fees, being based in part on the awards which have been vacated, are to be reconsidered.

Reversed and remanded.

N. J. KAUFMAN, P.J., dissented from that portion of the majority's holding which invalidated the jury award for replacement services. He would hold that the plaintiff's evidence was sufficient to establish a prima facie case that expenses for such services were reasonably incurred. The fact that the services were performed by the plaintiff's relatives and the plaintiff had not paid them but had agreed to do so depending on his eventual settlement with the defendant should not render the value of those services not reimbursible.

OPINION OF THE COURT

1. INSURANCE — No-FAULT INSURANCE — BREACH OF CONTRACT — MENTAL DISTRESS.

No damages are recoverable for mental and emotional distress for breach of an automobile no-fault insurance contract.

2. INSURANCE — No-FAULT INSURANCE — REPLACEMENT SERVICES.

The amount recoverable for replacement services under the automobile no-fault insurance act is limited to amounts which a survivor has expended or for which he has become liable (MCL 500.3108[1]; MSA 24.13108[1]).

3. ATTORNEY AND CLIENT — TESTIMONY BY ATTORNEY.

The canons of professional ethics advise against an attorney for a party testifying on his client's behalf, but such testimony is not rendered inadmissible by the disciplinary rules if it passes certain evidentiary tests (Code of Professional Responsibility and Canons, DR 5-101[B][1] through [4]).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY N. J. KAUFMAN, P.J.

4. INSURANCE — No-FAULT INSURANCE — REPLACEMENT SERVICES.

*Testimony showing that a plaintiff, injured in an automobile accident in which his wife was killed, depended on his relatives for such services as cleaning, laundry, and meals and that he had agreed to pay them for such services depending on his settlement with his insurer was sufficient to establish a prima*

*facie case that he had incurred expenses for purposes of the no-fault automobile insurance statute (MCL 500.3108; MSA 24.13108).*

*McIntosh, Cummings, McColl, Allen, Carson & McNamee,* for plaintiff.

*Bush, Luce, Henderson & Bankson,* for defendant.

Before: N. J. KAUFMAN, P.J., and V. J. BRENNAN and CYNAR, JJ.

PER CURIAM. Defendant appeals as of right from a judgment for plaintiff in the amount of $76,281.28. Plaintiff, the insured, brought this action against defendant insurer to recover no-fault benefits allegedly owed to plaintiff due to the death of plaintiff's wife in an automobile accident. Plaintiff sought survivor loss benefits (support loss and replacement services), statutory interest and attorney fees payable under the no-fault statute for overdue benefits. Plaintiff also claimed that he suffered mental anguish as a result of defendant's wrongful refusal to pay the benefits owed and, therefore, sought damages. Before the trial, the loss of support portion of plaintiff's claim was settled for $12,426. Therefore, the amount of such benefit was not in issue at trial, but whether the payment was overdue when made was still an issue. Defendant also paid $7,200 in an attempt to settle the replacement services portion of plaintiff's claim. However, that sum was only one-half of the amount plaintiff sought. Whether plaintiff was entitled to an additional amount for replacement services as well as whether the payment was overdue were issues at trial.

The jury returned a verdict in plaintiff's favor, finding that plaintiff was entitled to $100 per

week, or an additional $7,200, for replacement services. Further, the jury awarded plaintiff $50,-000 for mental anguish suffered due to defendant's failure to pay such benefits when due. In addition, defendant was assessed costs in the amount of $8,903.55, interest in the amount of $1,225.73, and attorney fees in the amount of $8,952. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied.

Prior to trial, defendant moved for partial summary judgment on the basis that plaintiff could not seek to recover damages for mental anguish for defendant's alleged breach of the insurance contract. The trial court found that plaintiff could seek such damages. Defendant's first claim of error is that the trial court's ruling was erroneous. We agree.

In *Jerome v Michigan Mutual Auto Ins Co,* 100 Mich App 685; 300 NW2d 371 (1980), this Court found that damages for mental and emotional distress for breach of an automobile no-fault insurance contract are not recoverable. The Court applied the reasoning set forth in *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980), *reh den* 409 Mich 1116 (1980), where the Court found that damages for mental distress arising from the breach of a disability insurance contract were not recoverable. *Jerome* has been followed by this Court in *Van Marter v American Fidelity Fire Ins Co,* 114 Mich App 171; 318 NW2d 679 (1982), and in *Liddell v Detroit Automobile Inter-Ins Exchange,* 102 Mich App 636, 649; 302 NW2d 260 (1981), where the Court reasoned:

"In our view, a contract for no-fault insurance benefits, like uninsured motorist coverage and disability insurance, is a pecuniary contract requiring the insurance company to pay certain sums upon the occurrence

of a specified event. It is not the type of personal contract into which one enters to have a certain type of service performed, the omission of which will foreseeably result in mental distress. Nor can it be said that the damages for mental anguish which plaintiff recovered were within the contemplation of the parties * * * Accordingly, we vacate that portion of the judgment which was awarded on the basis of 'emotional distress and/or mental anguish'."

We agree with the reasoning set forth in the above cases, and, therefore, vacate the jury's award of $50,000 for damages for mental anguish.

Defendant also maintains that the trial court erred in denying defendant's motion for a directed verdict with respect to plaintiff's claim for replacement services benefits.

The section of the no-fault act under which plaintiff brought this action for survivor's benefits states as follows:

"Sec. 3108. (1) Except as provided in subsection (2), personal protection insurance benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if the deceased had not suffered the injury causing death. Except as provided in section (2) the benefits payable for a survivor's loss in connection with the death of a person in a single 30-day period shall not exceed $1,000.00 for accidents occurring before October 1, 1978, and shall not exceed $1,475.00 for accidents

occurring on or after October 1, 1978, and is not payable beyond the first three years after the date of the accident." MCL 500.3108(1); MSA 24.13108(1).

The $1,000 limit includes both "support contributions" and "expenses for replacement services". *Swanson v Citizen's Ins Co,* 99 Mich App 52, 61; 298 NW2d 119 (1980).

After this action was filed but prior to the trial, defendant paid $12,456 in full settlement of plaintiff's claim for loss of support. Therefore, that claim was not at issue at trial. However, prior to trial, defendant had paid plaintiff only $7,200 (one-half of plaintiff's claim) for replacement services expenses. At trial, plaintiff sought to recover the remaining $7,200 he claimed for replacement services. The jury awarded plaintiff that amount.

Defendant contends that the award of $7,200 was improper because plaintiff did not prove he had actually incurred any expenses for replacement services.

In *Adkins v Auto-Owners Ins Co,* 105 Mich App 431, 434; 306 NW2d 312 (1980), this Court held that the amount recoverable for replacement services under the no-fault act is limited to "amounts expended or for which [the survivor] has become liable". In *Adkins,* the plaintiff was allowed to recover the amount, represented by cancelled checks, which she had paid after her husband's death for services he normally performed. Plaintiff was not allowed to recover an additional amount which she claimed represented the value of services previously supplied by her husband which, subsequent to his death, she had to perform or were provided by friends and relatives.

Applying *Adkins* to the instant case, the award of $7,200 was proper only if plaintiff expended such amount or had become liable to pay the same

in addition to the $7,200 defendant had previously paid for replacement services prior to trial. Therefore, plaintiff's burden was to prove that he expended, or became liable to pay, $14,400 for replacement services rendered within three years after his wife's death. After reviewing plaintiff's testimony, we find that plaintiff failed in his burden of proof. The trial court should have found, upon viewing the testimony and all legitimate inferences most favorably to the plaintiff, that the evidence did not establish a prima facie case. *Weeks v Feltner,* 99 Mich App 392; 297 NW2d 678 (1980).

Plaintiff testified that family members performed various household tasks for him after his wife died. However, he was unable to state with certainty how much time the relatives had spent on his behalf. In addition, he stated that he had agreed to compensate them if he prevailed in this lawsuit, but he was unable to state how much he had agreed to pay them. Finally, on cross-examination, plaintiff testified that although defendant had paid plaintiff $7,200 for replacement services prior to trial, plaintiff had not paid any of that money to the relatives who had performed the replacement services. Plaintiff did offer the testimony of an expert to show that, in general, replacement services of a household nature are worth from $4 to $6 an hour.

Since plaintiff did not offer proof that he expended money or became liable to pay for replacement services, the trial court's denial of defendant's motion for a directed verdict was error and the jury's award of $7,200 for replacement services is reversed.

Further, defendant argues that the trial court erred in allowing plaintiff's attorney to testify as a

witness while an associate from the same law firm continued to represent plaintiff at trial.

At trial, plaintiff sought to prove that he was entitled to additional replacement services benefits, that the survivor's loss payments which defendant had paid were overdue when paid, and that plaintiff had suffered mental anguish because of the defendant's wrongful failure to pay benefits when due. Since attorney Mugan had handled the claim for survivor's loss benefits from the time plaintiff became aware he was entitled to such benefits, Mugan's testimony was essential to plaintiff's case. Mugan sought to establish that plaintiff's claim was valid under the no-fault law, that the amounts claimed were proper under the law, and that defendant had unreasonably refused to pay plaintiff's valid claim.

Defense counsel objected to Mugan's testimony before, during, and after it was given. The trial court allowed the testimony but ordered that Mugan not participate further in the trial except that he was allowed to sit at the counsel's table.

The defendant cites two cases in support of its argument that it was reversible error to allow plaintiff's attorney to testify and to allow an associate of the same law firm to continue representation of plaintiff during the trial. *Shapiro v Wendell Packing Co,* 366 Mich 289; 115 NW2d 87 (1962); *Jacobs v Weissinger,* 211 Mich 47; 178 NW 65 (1920). However, in neither case did the Supreme Court find that allowing an attorney for one party to testify was reversible error. In *Shapiro,* the Court noted that, while the canons of professional ethics advise against a lawyer's testifying on his client's behalf, the applicable canon does not render inadmissible such testimony if it passes other evidentiary tests.

The testimony of plaintiff's attorney was necessary to prove plaintiff's claims. Since the admissibility of evidence is within the sound discretion of the trial court, we find no error in the trial court's ruling allowing plaintiff's attorney to testify. Further, we find no error in allowing an associate of the same law firm to represent plaintiff for the remainder of the trial. The Code of Professional Responsibility and Canons, DR 5-102(A), which is advisory, *Shapiro, supra,* 294, states:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).

Disciplinary Rule 5-101(B)(1) through (4) states:

"(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinc-

tive value of the lawyer or his firm as counsel in the particular case."

Withdrawal of the services of plaintiff's attorney's firm during the trial would have worked a substantial hardship on plaintiff. Therefore, we find no error.

Next, defendant maintains that the closing argument of plaintiff's counsel was prejudicial and influenced the jury's decision to award damages for mental anguish as a means of punishing the defendant. Defendant contends that the remarks denied defendant a fair trial because the argument related to issues outside the scope of the issues raised at trial. We have reviewed the closing argument and note that plaintiff's counsel's remarks well could have influenced the jury to decide the issue of mental anguish on the basis of considerations not germane to the issues presented to them. See *Williams v Wheels, Inc,* 407 Mich 417; 286 NW2d 239 (1979), *reh den* 407 Mich 1165 (1980). However, since we have vacated the jury's award for damages for mental anguish, we need not find reversible error on this ground.

Defendant's final claim is that the trial court erred in finding that plaintiff was entitled to interest and attorney fees, pursuant to MCL 500.3142; MSA 24.13142 and MCL 500.3148; MSA 24.13148, on benefits previously paid to the plaintiff as well as on additional benefits awarded by the jury. Because the trial court's award for interest and attorney fees was based in part on the jury's award which we have reversed, we remand for a reconsideration of the amounts awarded in light of this Court's decision.

Reversed and remanded.

N. J. KAUFMAN, P.J. *(dissenting in part).* I agree

with the majority that plaintiff was not entitled to mental anguish damages for defendant's alleged breach of the no-fault insurance contract. Moreover, I agree that, inasmuch as the award of attorney's fees and interest was based in part upon the mental anguish portion of the verdict, those items must be reconsidered by the trial court. Nonetheless, I must respectfully dissent from that portion of the majority opinion vacating the jury award of $7,200 for replacement services.

As the result of injuries sustained in an automobile accident, plaintiff's wife died on September 18, 1976. Plaintiff was also injured in the accident. He testified that he stayed with his parents for several days after leaving the hospital. During that period, his mother prepared his meals and did his laundry. In the weeks and months following the accident, ordinary household duties were performed for plaintiff by his mother, mother-in-law and sister. He testified that they cleaned his apartment, did his laundry and did sewing and mending. Plaintiff indicated that he ate most of his meals at their homes. Although plaintiff felt it would be difficult to estimate just how much time was spent by each relative in performing the tasks, he stated that for the first few months he went to his parents', his in-laws', or his sister's home four or five times a week, and that the various relatives performed tasks for him approximately five hours a day. An economist testifying on plaintiff's behalf valued the services claimed at $80 to $100 per week. Although plaintiff acknowledged that he had not promised to reimburse each relative a specific amount of money, he testified that he had agreed with each to pay for their services depending on his settlement with defendant.

Viewing this evidence in a light most favorable to plaintiff, I would hold that it was sufficient to establish a prima facie case that expenses were reasonably incurred under MCL 500.3108; MSA 24.13108. Plaintiff had quite plainly agreed to reimburse his relatives for their services. I do not believe that his liability to them should be viewed as any less real merely because he was waiting for an insurance award prior to payment. To hold otherwise is to establish a "Catch-22" situation that invariably will permit insurers to avoid payment for legitimate replacement services provided by relatives. Typically, an insured who is unsure of the extent of his insurance coverage will obtain replacement services from those close to him, and agreements for reimbursement will be inarticulately made. Nonetheless, an obligation to those persons will be incurred. I would hold such obligations reimbursible as reasonably incurred under § 3108.