No. 68,875

TIPHANI J. HEPHNER, a minor, by and through her father and next friend, CLAUDE R. HEPHNER, *Appellee*, v. TRADERS INSURANCE COMPANY, *Appellant*.

(864 P.2d 674)

Opinion filed December 10, 1993.

*William A. Vickery*, of McMaster and McMaster, of Wichita, argued the cause and *Kevin M. McMaster*, of the same firm, was with him on the briefs for appellant.

*Bill H. Raymond, of Alpha-Omega Law Office, of Wichita,* argued the cause, and *Clay Cox,* of the same firm, was on the briefs for appellee.

The opinion of the court was delivered by

ABBOTT, J.: The issues in this appeal are what must be proved to recover "substitution benefits" under an automobile insurance policy and whether attorney fees should be paid by the insurance carrier.

The trial court held the minor child did not have to prove an "actual economic loss or any incurred expense" to receive "substitution benefits" under the policy. The Court of Appeals reversed the trial court's decision in 18 Kan. App. 2d 344, 852 P.2d 520 (1993). The Court of Appeals held a plaintiff must prove actual economic loss in order to recover for reasonable expenses incurred. This court granted plaintiff's petition for review.

This case was tried on stipulated facts. Tisha J. Hephner was killed in an automobile accident on January 25, 1991. Tisha was the mother of Tiphani J. Hephner, born March 17, 1987.

At the time of her death, Tisha had an automobile insurance policy with Traders Insurance Company which provided Personal Injury Protection (PIP) benefits, as required by the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.*

Tiphani Hephner is Tisha's sole survivor under the insurance policy and KAIRA. Prior to Tisha's death, she and Tiphani resided with Tisha's parents (Tiphani's grandparents), Claude and Judy Hephner. Tisha was employed at the time of her death, and Judy assisted with Tiphani's care during Tisha's work hours. Tiphani was born with multiple disabilities, and she attended Rainbows Unlimited for preschool and for physical and speech therapy both before and after Tisha's death. After Tisha's death, Claude and Judy cared for Tiphani and formally adopted her on September 20, 1991. Judy died on December 28, 1991.

KAIRA requires that all automobile owners provide motor vehicle liability insurance coverage, including PIP benefits. K.S.A. 40-3101 *et seq.* PIP benefits include substitution benefits and survivors' benefits. K.S.A. 1992 Supp. 40-3103(q). " 'Substitution benefits' means allowances for appropriate and reasonable expenses incurred in obtaining other ordinary and necessary services in lieu of those that, but for the injury, the injured person would

have performed for the benefit of such person or such person's family, subject to a maximum of $25 per day for not longer than 365 days after the date such expenses are incurred." K.S.A. 1992 Supp. 40-3103(w). " 'Survivors' benefits' means total allowances to all survivors for: (1) Loss of an injured person's monthly earnings after such person's death, up to a maximum of not less than $900 per month; and (2) substitution benefits following the injured person's death." K.S.A. 1992 Supp. 40-3103(y). A "survivor" is defined as "a decedent's spouse, or child under the age of 18 years." K.S.A. 1992 Supp. 40-3103(x).

The Court of Appeals phrased the issue before it as "Must a plaintiff prove actual economic loss in order to recover for reasonable expenses incurred?" *Hephner*, 18 Kan. App. 2d at 345. This construction was evidently based on two conclusions of law made by the trial court: (1) "It is sufficient for Plaintiff to recover survivors benefits if the Claimant is within the statutory definition of a 'survivor' without the necessity of proving actual economic loss or any incurred expense," and (2) "Since Tiphani Hephner is a 'survivor' she falls into the definition of benefits to be provided by 'substitution benefits' under Defendant's insurance policy and the Kansas Statutes. It is not necessary for Plaintiff to establish actual economic loss or expenses incurred to recover these benefits." The Court of Appeals answered its question in the affirmative, holding that a plaintiff must prove genuine economic loss in order to recover substitution benefits. *Hephner*, 18 Kan. App. 2d at 345-46.

The Court of Appeals based its holding requiring genuine economic loss on three factors. First, the court considered the definition of "incur": " 'To become liable or subject to, to bring down upon oneself, as to incur debt, danger, displeasure and penalty, and to become through one's own action liable or subject to.' Black's Law Dictionary 768 (6th ed. 1990). See Webster's Third New International Dictionary 1146 (1986)." *Hephner*, 18 Kan. App. 2d at 345.

The Court of Appeals next discussed the comments to the Uniform Motor Vehicle Accident Reparations Act, which includes a provision for replacement services benefits similar to the substitution benefits under KAIRA. The definition of "survivor's replacement services loss" under § 1(a)(5)(v) of the Uniform Motor

Vehicle Accident Reparations Act means "expenses reasonably incurred." 14 U.L.A. 35, 43 (1990). The comments state that recovery is limited to "reasonable expenses incurred, such as those in hiring a substitute to perform the services. For example, a housewife whose injury prevented her from performing services in the home could not attribute loss to the incapacity itself, but loss would be suffered if domestic help were hired to perform the services." 14 U.L.A. at 46. In other words, recovery is permitted "to cover the cost of hiring someone to perform the services, rather than to compensate for the mere loss of the ability to perform them." *Hephner*, 18 Kan. App. 2d at 346 (citing 1 No-Fault and Uninsured Motorist Automobile Insurance § 11.40, p. 11-46 [1992]).

Finally, the Court of Appeals cited cases from other jurisdictions which support a requirement of genuine economic loss or expenses actually incurred. These cases and others support such a requirement. See *France v. Ky. Farm Bureau Mut. Ins.*, 605 S.W.2d 773 (Ky. App. 1980), *rev. denied* October 28, 1980; *Schaible v. Mich Mutual*, 116 Mich. App. 116; 321 N.W.2d 860 (1982), *lv. to appeal denied* 417 Mich. 920 (1983); *Adkins v. Auto Owners Ins Co*, 105 Mich. App. 431, 306 N.W.2d 312 (1980) (cited in *Hephner*), *lv. to appeal denied* 411 Mich. 912 (1981); *Youmans v. Citizens Ins Co*, 89 Mich. App. 387, 280 N.W.2d 539, *lv. to appeal denied* 407 Mich. 894 (1979); *Nadeau v. Austin Mut. Ins. Co.*, 350 N.W.2d 368 (Minn. 1984); *Fandray v. Nationwide Mut. Ins. Co.*, 313 Pa. Super. 186, 459 A.2d 801 (1983) (cited in *Hephner*).

Two cases which hold that the plaintiff was entitled to replacement service benefits without having to prove actual economic loss are distinguishable because those cases turned on the language of the statute which made payment of the benefits mandatory. *Rindahl v. National Farmers Union Ins.*, 373 N.W.2d 294 (Minn. 1985); *Maros v. Transamerica Insurance Company*, 76 N.J. 572, 388 A.2d 971 (1978). The provision for substitution services in KAIRA is different than the provisions in Rindahl and Maros; thus, those cases are of no assistance in the instant case.

The provision in KAIRA for substitution benefits providing coverage for "appropriate and reasonable expenses incurred" requires

proof of genuine economic loss. The Court of Appeals did not err in so holding. This does not end the inquiry.

Tiphani argued in her petition for review and in her supplemental brief that she has proven actual expenses were incurred in obtaining ordinary and necessary services from Claude to replace those that her mother would have provided. She notes extensively the services Claude and Judy provided to Tiphani although they had no duty or obligation to do so and the expense she incurred in obtaining their services even though she has not yet paid the amount owed.

The Court of Appeals stated in its opinion that "Claude and Judy did not hire anyone to care for Tiphani; they have incurred no genuine economic loss." *Hephner*, 18 Kan. App. 2d at 346. This statement, while correct, is irrelevant. Claude and Judy are not "survivors" under Tisha's insurance policy and they are not eligible to recover these insurance benefits. Rather, their status and involvement in this case is only as the providers of ordinary and necessary services for Tiphani that her mother would have performed but for her death. In other words, Claude and Judy are the people performing the services Tisha was no longer able to perform. Claude's name in the caption of this action as Tiphani's "next friend" does not make him a claimant under Tisha's insurance policy. Tiphani is the beneficiary under Tisha's insurance policy, and Claude is the provider of services. The question, therefore, is whether Tiphani has incurred actual expenses in obtaining replacement services, not whether Claude and Judy incurred such expenses.

Our Court of Appeals has addressed the level of proof required to recover insurance benefits. In *DiBassie v. American Standard Ins. Co. of Wisconsin*, 8 Kan. App. 2d 515, 521, 661 P.2d 812 (1983), the court noted that a liberal construction of the notice provision of K.S.A. 40-3110 requiring payment of PIP benefits upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred is necessary to attainment of the purpose and objectives of the Kansas Automobile Injury Reparations Act. "[A]n insured has provided 'reasonable proof' of his right to recover PIP benefits whenever he furnishes to his insurer a bill for medical treatment which, when viewed with other objective facts furnished to the insurer, shows a clear relation to a covered

loss." *DiBassie*, 8 Kan. App. 2d at 519. Thus, where the insured provided medical bills corresponding to the injuries listed on his application for benefits and on the accident report, and where plaintiff's attorney submitted a letter to insurer stating that the injuries were a result of the accident, the insured was entitled to prompt payment of benefits.

Traders argues in its supplemental brief that Tiphani did not provide proof of expenses incurred before instituting this action and therefore *Miner v. Farm Bur. Mut. Ins. Co., Inc.*, 17 Kan. App. 2d 598, 841 P.2d 1093 (1992), requires that Tiphani's claim fail. However, nothing in the record shows that Traders raised this issue in the trial court. "[A] point not presented to the trial court will not be considered for the first time on appeal." *Plummer Development, Inc. v. Prairie State Bank*, 248 Kan. 664, Syl. ¶ 3, 809 P.2d 1216 (1991).

Several cases support reimbursing substitution services even when the services are provided by family members. The Michigan Court of Appeals compared substitution services benefits under its no-fault insurance (similar to KAIRA substitution benefits) to its workers disability compensation act and held that just as the workers disability compensation act was not concerned with the status of the person providing the services, neither was the no-fault insurance act concerned with the status of the service provider. Youmans, 89 Mich. App. at 391-92. Hence, compensation for substitution services provided by family members is available. See *Fortier v. Aetna Casualty*, 131 Mich. App. 784, 346 N.W.2d 874 (1984), *lv. to appeal denied* 419 Mich. 939 (1985); *Butler v. DAIIE*, 121 Mich. App. 727, 329 N.W.2d 781 (1982); *Visconti v. DAIIE*, 90 Mich. App. 477, 282 N.W.2d 360 (1979). Further, the Minnesota Supreme Court in *Nadeau*, 350 N.W.2d 368, implicitly held that substitution services provided by family members are compensable, although the court denied recovery to the insured because she had not proven that she actually incurred expenses for services rendered by her husband.

The provisions in KAIRA for substitution and survivors' benefits contain no limitation on recovery merely because the services were provided by a relative of the insured or survivor. Therefore, although the services replacing those of Tiphani's mother were provided by Tiphani's grandparents, there is no limit in KAIRA

for benefits for these services as long as Tiphani actually incurred expenses or liability for expenses in obtaining the services. Claude and Judy had no legal duty to care for Tiphani when Tisha died. They did so gratuitously until they adopted Tiphani on September 20, 1991. Although Judy had helped with Tiphani's care during Tisha's work hours before Tisha's death, Tisha was responsible for most of Tiphani's care and the care Claude and Judy provided to Tiphani after Tisha's death far exceeded the limited assistance Judy had previously provided. Claude submitted an invoice to Traders which charges Tiphani $25 per day for custodial care services—this is an expense to be paid by Tiphani. Claude indicated at his deposition an intent to charge Tiphani for his services, even though he admitted that he would not require Tiphani to pay him unless she recovered the substitution benefits provided in Tisha's insurance policy. Indeed, Claude stated that he regarded Tiphani as currently owing him a debt of $9,125 ($25 per day for 365 days) for the burden of custodial care he provided to her which he was not obligated to provide.

Several Michigan Court of Appeals cases provide assistance in determining whether the invoice and Claude's deposition constitute sufficient proof that Tiphani is actually obligated to pay Claude $9,125 for the services he provided to her. In *Fortier*, 131 Mich. App. 784, the court held that records kept by the deceased insured's children by marking on calendars the services they performed, the amount of time spent performing the services, and the fees charged for the services sufficiently established that the insured's wife actually incurred expenses in obtaining services to replace those her deceased husband would have provided. There was no mention that the wife had actually paid the children for their services. In *Youmans*, 89 Mich. App. 387, the child resided with her natural father but was entitled to replacement service benefits under her deceased mother's insurance policy to pay for expenses incurred when her father agreed or contracted with his new wife to provide the services the child's natural mother had formerly provided. The court noted that the father's new wife did not enjoy the rights of a parent nor was she liable for all the duties of a parent, and she did not legally replace the child's deceased mother.

However, in *Schaible*, 116 Mich. App. 116, the court did not allow recovery for replacement services. There, the deceased insured's husband testified that relatives had performed various tasks for him replacing services his wife would have provided, but he had not kept a record of the time spent or the expenses incurred. In fact, although the husband had agreed to compensate his relatives for their services if he won his lawsuit against the insurance company, he had not paid them from an earlier payment from the insurance company for replacement services nor was he able to indicate how much he had agreed to pay his relatives for their services. *Schaible*, 116 Mich. App. at 122. Thus, the court held that the husband failed to prove expenses incurred, and he was not entitled to recover for replacement services in addition to what the insurance had previously paid. Likewise, in *Adkins*, 105 Mich. App. 431, although the plaintiff estimated the value of her deceased husband's services to be $15 to $20 per day, she was only permitted to recover for expenses she actually incurred as established by canceled checks showing she had paid others to perform services for her. See also *Nadeau*, 350 N.W.2d 368 (services were provided by insured's husband but were not directly paid for by injured insured; Minnesota Supreme Court held that expenses were not incurred).

The evidence here is similar in some way to each of the above cases. Claude had no duty or obligation to care for his granddaughter (until he and Judy adopted her), yet he agreed to do so, as in *Youmans*. Neither Claude nor Tiphani kept a record of each service Claude performed for Tiphani, unlike the children in *Fortier*. However, Claude was not performing isolated services for Tiphani on an as-needed basis. Rather, Claude was providing Tiphani daily care 24 hours a day, 7 days a week; a day-to-day record of this would be unnecessary. Claude did provide written documentation to Tiphani charging her $25 per day for his services. As in *Schaible*, however, Claude indicated at his deposition that he did not intend to make Tiphani pay for his services if she did not recover substitution benefits from Traders. Finally, both parties have agreed that the reasonable value of a primary child care provider exceeds $25 per day, similar to the estimate in *Adkins*. Here, however, an invoice charging for the services was provided, which was lacking in *Adkins*.

While the question of whether Tiphani actually incurred expenses or a liability for expenses in obtaining substitution services is obviously a close one, we believe she has established genuine economic loss. Tiphani was three years old and disabled when her mother died. Claude and Judy provided substantial care to Tiphani after her mother died although they were not obligated to do so. Claude provided an invoice charging Tiphani $25 per day for his services, an amount which Traders agrees is less than the reasonable value of a primary child-care provider. Claude considers Tiphani to be indebted to him, even though he admits he will not collect from Tiphani unless she recovers substitution benefits from Traders. Although Tiphani has not yet paid Claude, she has incurred an obligation to pay him as evidenced by the invoice. Liability for expenses can be incurred but payment deferred for a period of time. Cf. DiBassie, 8 Kan. App. 2d 515 (plaintiff not required to provide canceled checks showing payment of medical bills; rather, submission of medical bills constituted reasonable proof of liability for expenses incurred). We hold Tiphani has provided reasonable proof of liability for expenses incurred in obtaining ordinary and necessary services to replace those of her mother.

Traders argues that Claude charged Tiphani for his services only in an attempt to obtain insurance benefits. Somehow, it does not seem appropriate for an insurance carrier to argue it should not have to pay because the insured's primary motive in doing an act is to obtain insurance benefits. One of the rationales for disallowing replacement services benefits when the services are provided by family members is to insure that expenses have been legitimately incurred and to protect against fraud and collusion. See Leonard v. Preferred Risk Mut. Ins. Co., 247 Ga. 574, 576, 277 S.E.2d 675 (1981) (statute disallowed replacement services benefits when services were provided by family members). But see Fortier, 131 Mich. App. at 791 (replacement services benefits compensable even when services are provided by family member; plaintiff only required to prove she incurred a liability because requiring documentation such as checks, receipts, and bills would not prevent collusion as the parties could easily pass the documents between themselves). Traders argues that it has paid Tiphani survivor's benefits totalling $10,800 to date and that she

has not paid Claude for his services with that money, thus arguing that she has not legitimately incurred expenses.

There is no requirement in K.S.A. 1992 Supp. 40-3103(w) or elsewhere that substitution services be provided by someone other than a family member. The fact that Tiphani is Claude's natural granddaughter does not negate the time and money he invested in caring for her after her mother died. It is reasonable that Claude charged Tiphani for his services. Indeed, were Claude not a blood relative Tiphani would be permitted to recover substitution benefits with which to pay her bill to him. Although Tiphani has received $10,800 thus far from Traders, that money was in settlement of the funeral expenses and lost wages for Tisha. Tiphani is not required to use that money, if indeed it has not been used to pay other expenses, to pay for substitution services. That Claude is letting Tiphani defer payment for his services until she receives compensation from Traders does not mean that she has not incurred genuine economic loss. Tiphani should not be prevented from recovering substitution benefits merely because she is able to defer payment for those services until she receives compensation from the insurance company. Tiphani has incurred genuine expenses of $25 per day in obtaining substitution services due to Tisha's death. Tisha's insurance coverage provides reimbursement for the expense of substitution services. Traders, therefore, must pay Tiphani the $25 per day she incurred in obtaining substitution services.

The Court of Appeals panel notes that some may find its decision harsh but, if so, the remedy lies with the legislature. A three-year-old disabled child needs care. It is indeed harsh to say that if she has sufficient funds to pay for that care she is entitled to be reimbursed up to the policy limits, but if she has no money but is fortunate enough to have loving, caring relatives who are willing to care for her but do not jump through a hoop by seeing that she somehow pays them she cannot recover benefits to pay them. It does not seem to us to be the legislative intent to punish the poor and reward the more affluent, both of whom have paid the same premium. We, like the Court of Appeals, believe that if we are wrong in what the legislature intended, the legislature has it within its power to require that only reasonable expenses actually paid be reimbursed.

The insurance carrier filed a supplemental brief in this court, raising for the first time the issue whether the adoption by Claude and Judy would bar any claim for substitution benefits for care furnished by them after the date of the adoption. That issue was not raised in the pretrial order or any place in the record before us or in the briefs filed in the Court of Appeals. Having failed to raise that issue in the trial court (and also the Court of Appeals), the insurance carrier cannot raise it for the first time at this level. *Plummer Development*, 248 Kan. 664, Syl. ¶ 3.

We reverse the trial court's award of attorney fees. Genuine disputes existed as to whether Tiphani had provided reasonable proof of her loss and as to whether she was entitled to recover and the insurance carrier did not refuse without just cause or excuse to pay the substitution benefits she requested. K.S.A. 40-3111(b); *Hand v. State Farm Mut. Auto. Ins. Co.*, 2 Kan. App. 2d 253, 577 P.2d 1202 (1978).

The judgment of the Court of Appeals is reversed; the judgment of the district court is affirmed in part and reversed in part.