United States Court of Appeals
Fifth Circuit

**F I L E D**

September 18, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

No. 05-10468

---

**FOULSTON SIEFKIN LLP, formerly known as Foulston & Siefkin LLP;
HARVEY R. SORENSON,**

Plaintiffs-Appellees-Cross Appellants,

versus

**WELLS FARGO BANK OF TEXAS N.A., Trustee of the Eleanor Pierce
Stevens Irrevocable Gift Trust,**

Defendant-Appellant-Cross Appellees.

---

**Appeals from the United States District Court
for the Northern District of Texas**

---

Before SMITH, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Wells Fargo Bank of Texas N.A., trustee of the Eleanor Pierce Stevens Trust, appeals the summary judgment awarding Harvey R. Sorenson reimbursement for fees and expenses he claims he incurred, but admits he did *not* pay, as a defendant in state-court litigation regarding his serving as trustee for the Trust. Sorenson and his law firm, Foulston Siefkin LLP (Siefkin), cross-appeal the amount awarded.

Primarily at issue is application of the word "reimbursement" as employed in the Trust. The judgment is **VACATED**; judgment is **RENDERED** for Wells Fargo.

I.

Sorenson, a partner at Siefkin in Wichita, Kansas, created and drafted the Trust in 1989, with a debenture from Marshall Petroleum, Inc., paying $50,000 interest per month. Sorenson was the first trustee. Stevens, then 85 years old, signed the Trust in Dallas, Texas. She was the designated primary beneficiary for ten years, to be followed by her son, J. Howard Marshall, III.

Sorenson remained the trustee until resigning in 1996. That year, Marshall III sued Sorenson and Siefkin in Texas state court (Texas action), raising various breach-of-fiduciary-duty/mismanagement claims regarding the Trust, as well as other claims regarding his father's (Marshall II) estate. Sorenson and Siefkin retained a law firm in Texas to represent them in the Texas action. A partial summary judgment was awarded Sorenson and Siefkin in 1999, dismissing all claims relating to the Trust and Stevens' estate. In 2001, judgment was awarded Sorenson and Siefkin on the remaining claims.

Sorenson and Siefkin had approximately $1.5 million in charged fees and expenses in the Texas action. Siefkin's liability insurance paid all of them beyond the deductible ($250,000), which Siefkin paid.

In turn, Sorenson and Siefkin requested payment from Wells Fargo, the current trustee of the Trust, for those fees and expenses. Wells Fargo refused and filed this action in Texas state court, seeking a declaration under TEX. CIV. PRAC. & REM. CODE §

2

37.001 that Trust assets could not be used to pay those fees and expenses.

Invoking diversity jurisdiction, Sorenson and Siefkin removed this action to federal court, and counter-claimed for negligence and breach of contract or violation of the Trust. They requested approximately $1.3 million from Wells Fargo for the fees and expenses from the Texas action.

The district court realigned the parties, making Sorenson and Siefkin the plaintiffs and Wells Fargo the defendant. After cross-motions for summary judgment were filed, the district court held: (1) Sorenson was entitled to reimbursement of fees and expenses he incurred before he received the partial summary judgment in 1999 in the Texas action; (2) the collateral-source rule, which bars reduction of an award merely because a third party pays an incurred liability, applied to this action; (3) Sorenson was *not* entitled to recover any fees or expenses incurred after the 1999 partial summary judgment, absent showing special circumstances warranting recovery, because that ruling extinguished all claims relating to the Trust; and (4) Siefkin had no right to subrogation because it was jointly and severally liable for Sorenson's fees and expenses.

Instead of proceeding with a jury trial, Sorenson stipulated he is owed $225,000 if he cannot recover fees or expenses incurred after the partial summary-judgment, and the parties reserved the

3

right to appeal adverse rulings by the district court. Accordingly, a final judgment was entered in March 2005.

## II.

Wells Fargo claims the district court erred: by granting Sorenson, and denying it, summary judgment on Sorenson's reimbursement claim; and by applying the collateral source rule. Sorenson and Siefkin maintain the court erred by denying recovery for fees and expenses incurred after the partial summary judgment. Siefkin also contends it is entitled to equitable subrogation for fees and expenses incurred by Sorenson but paid by Siefkin. Because the district court erred in allowing Sorenson *any* recovery, we need not address the other issues.

A summary judgment pursuant to Federal Rule of Civil Procedure 56 is reviewed *de novo*. *E.g.*, **Todd v. AIG Life Ins. Co.**, 47 F.3d 1448, 1451 (5th Cir. 1995). Such judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c). All evidence is viewed in the light most favorable to the non-movant. *E.g.*, **Kee v. City of Rowlett**, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001). A party opposing summary judgment must provide specific facts showing the existence of a

4

genuine issue for trial; it may not rest on the pleadings.  *E.g.*,
***Ragas v. Tenn. Gas Pipeline Co.***, 136 F.3d 455, 458 (5th Cir. 1998).

The parties agree Kansas law, which governs the Trust terms and provisions, applies to this diversity action.  Pursuant to that law, "all provisions [of the Trust must be construed] together and in harmony with each other rather than by critical analysis of a single or isolated provision".  ***Metro. Life Ins. Co. v. Strnad***, 876 P.2d 1362, 1371 (Kan. 1994).

The applicable Trust language states:  if the trustee is sued on Trust-related issues and

> is adjudicated or is otherwise demonstrated, to the satisfaction of the court in which such suit is instituted, to be free from liability ... [the] Trustee shall be entitled to *reimbursement out of the trust* estate for all reasonable costs and expenses, including attorneys' fees, *incurred* in resisting such suit.

(Emphasis added.) Sorenson was sued in his capacity as trustee and adjudicated *not* liable.

The linchpin for this appeal is Sorenson's *not* having paid anything "in resisting" the Texas action (other than minimal expenses, mostly related to travel, for which he was reimbursed by Siefkin).  At issue, therefore, is whether, under Kansas law, Sorenson may be *reimbursed* for fees and expenses *incurred*, even though he paid none.  (Sorenson and Siefkin were both defendants in the Texas action.  Siefkin does *not* claim Sorenson owes it money

5

for its paying the fees and expenses.  Nor does Sorenson, as a partner in Siefkin, claim an undivided interest in the money used to pay them.)

The Trust does not define "reimburse" or "incur", and there is no Kansas law directly on point.  The district court relied on *Hephner v. Traders Ins. Co.*, 864 P.2d 674 (Kan. 1993), in granting Sorenson summary judgment.  *Hephner*, however, involved the Kansas Automobile Injury Reparations Act (KAIRA), KAN. STAT. ANN. § 40-3101. In *Hephner*, a young child, cared for by her grandparents after her mother was killed in an automobile accident, sought payment from an insurer for that care, pursuant to the KAIRA.  It entitled her to money for services her mother would have provided had she not died. *Hephner*, 864 P.2d at 676.

The child's grandfather documented charging his granddaughter $25 per day for "daily care 24 hours a day, 7 days a week".  *Id*. at 679.  Although the grandfather did not intend to collect any money from his granddaughter unless she recovered insurance benefits under the KAIRA, the court held:  "she ... incurred an obligation to pay him as evidenced by the [$25 per day] invoice"; and such liability can be incurred even if payment is deferred.  *Id*. *Hephner* was also partly based on the KAIRA's underlying legislative intent; the court noted the legislature could not have intended to allow reimbursement for victims financially able to employ private care but not for those dependent on their families for care (and

6

thus, as with the young child in **Hephner**, owed money, if at all, for that care, only upon collection of insurance benefits). *Id.* at 680. In addition, to the extent **Hephner** involved an ambiguous insurance contract, such contracts are interpreted liberally to benefit the insured. **O'Bryan v. Columbia Ins. Group**, 56 P.3d 789, 792 (Kan. 2002).

The district court also discussed the definition of "incurred", citing dictionaries and case law from various jurisdictions for the proposition that liability can be incurred even if payment is never made. Assuming *arguendo* that is correct, the Trust entitles the trustee only to *reimbursement* for incurred liabilities. It does not dictate *payment* for them. Sorenson, the drafter of the Trust, used the word *reimbursement*, not *payment*.

Black's Law Dictionary defines "reimbursement" as "repayment" or "indemnification". BLACK'S LAW DICTIONARY 1312 (8th ed. 2004). Similarly, when Sorenson drafted the Trust in 1989, Black's defined "reimburse" as "[t]o pay back, to make restoration, to repay that expended; to indemnify, or make whole". BLACK'S LAW DICTIONARY 1157 (5th ed. 1979).

Sorenson and Siefkin counter with the American Heritage Dictionary's second definition of "reimburse": "To pay back or compensate (another party) for money spent or losses incurred". THE AMERICAN HERITAGE DICTIONARY (4th ed. 2000). Even accepting that definition, Sorenson would *not* be entitled to reimbursement.

7

Moreover, as stated in **United States v. Upton**, "[r]eimbursement necessarily implies that something has been paid which requires compensation for money spent". 91 F.3d 677, 682 & n.8 (5th Cir. 1996) (citing WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 991 (1984)), *cert. denied*, 520 U.S. 1228 (1997). Because Sorenson is not out any money, and never will be, there is nothing "to pay [him] back or compensate [him] for", even if he did *incur* expenses at some point.

To hold otherwise would be to allow Sorenson, a lawyer, to claim he drafted the Trust's "reimbursement" clause with the understanding it might allow him, in effect, to receive a windfall if he prevailed in an action against him in his capacity as trustee. That cannot be the law.

### III.

For the foregoing reasons, the judgment is **VACATED**; judgment is **RENDERED** for Wells Fargo.

*VACATED and RENDERED*

8