NOT DESIGNATED FOR PUBLICATION

No. 117,149

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROYCE WILLIAMS,
*Appellee*,

v.

GEICO GENERAL INSURANCE COMPANY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed February 2, 2018. Reversed.

*Lyndon W. Vix* and *Nathaniel T. Martens*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant.

*Theodore C. Davis*, *Kathryn A. Wright*, and *Richard W. James*, of DeVaughn James Injury Lawyers, of Wichita, for appellee.


Before BRUNS, P.J., SCHROEDER, J., and HEBERT, S.J.

PER CURIAM: GEICO General Insurance Company (GEICO) appeals from a judgment of the district court awarding Royce Williams judgment for substitution benefits under K.S.A. 40-3103(w) for services performed by his wife while he was recovering from injuries suffered in an automobile accident.

We find that under the circumstances of this case, the district court erred in finding Williams to be entitled to substitution benefits. Accordingly, the judgment of the district court is reversed.

1

*Factual and Procedural Background*

Williams was injured in an automobile collision in December 2015 in Sedgwick County. At the time of the accident, Williams was insured by GEICO and he applied for personal injury protection (PIP) benefits from GEICO under the terms of the policy.

As a result of the accident, Williams suffered a displaced fracture of his right tibia which required surgery. He was precluded from any weight-bearing activity on the leg for 12 weeks after the surgery. Williams and his wife, Mary Williams, had been married for approximately two years at the time of the accident. Both had been married before and they kept separate finances. They worked opposite schedules and rarely ate dinner together. Prior to the accident, Williams prepared his own meals, did his own laundry, drove himself in his vehicle, took care of his own personal hygiene, did his own shopping, and was capable of administering his own medication. After Williams was released from the rehabilitation hospital, Mary assisted with and/or provided these services around the home and for Williams from mid-December 2015 until the end of March 2016. Mary averred that she frequently had to be absent from work to assist Williams and that he had agreed to pay her $25 per day for her additional care of him during his recovery.

On March 7, 2016, Williams filed a limited action proceeding against GEICO claiming that certain PIP benefits remained unpaid. Particularly, Williams claimed GEICO failed to pay "substitution benefits," as defined in K.S.A. 40-3103(w), for the services performed by Mary. In response, GEICO denied liability for duties performed by Mary.

Although the parties were able to settle various other issues, the issue of payment of substitution benefits in the amount of $2,625 was unresolved, and each party filed a motion for summary judgment. The essential facts set forth in the motions were subject to

2

little dispute, but the parties disagreed as to the proper interpretation and application of K.S.A. 40-3103(w) in light of *Hephner v. Traders Ins. Co.*, 254 Kan. 226, 864 P.2d 674 (1993).

The district court heard oral argument on November 30, 2016. On December 1, 2016, the district court orally announced its ruling granting Williams summary judgment in the amount of $2,625—finalized in a written journal filed some two weeks later. It is from this judgment that GEICO now appeals. The district court, however, denied Williams' request for attorney fees; that ruling has not been timely appealed.

*Interpretation and Application of K.S.A. 40-3103(w)*

In its issue on appeal, GEICO challenges the district court's statutory interpretation and application of "substitution benefits" under K.S.A. 40-3103(w). This is a question of law over which we exercise de novo review. *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n,* 306 Kan. 845, 848, 397 P.3d 1205 (2017).

The Kansas Automobile Insurance Reparations Act, K.S.A. 40-3101 et seq., (the KAIRA) was adopted in 1974. The KAIRA mandated automobile insurers issuing policies in Kansas provide PIP insurance allowing insureds to obtain certain limited benefits from their own insurance carriers. The PIP benefits promoted prompt compensation for persons sustaining accidental bodily injury arising out of the operation of an automobile. See *Burris v. Northern Assurance Co. of America*, 236 Kan. 326, 331, 691 P.2d 10 (1984); *Dreiling v. State Farm Mut. Auto. Ins. Co.*, 227 Kan. 851, 854-55, 610 P.2d 611 (1980).

Among the benefits automobile insurance policies in Kansas must include are PIP benefits "to the named insured, relatives residing in the same household," and specific other persons. K.S.A. 2016 Supp. 40-3107(f). PIP benefits, by statute, include "disability

benefits, funeral benefits, medical benefits, rehabilitation benefits, *substitution benefits* and survivors' benefits" required by the KAIRA. K.S.A. 40-3103(q).

> "'Substitution benefits' means allowances for appropriate and reasonable *expenses incurred* in obtaining other ordinary and necessary services in lieu of those that, but for the injury, *the injured person would have performed for the benefit of such person or such person's family*, subject to a maximum of $25 per day for not longer than 365 days after the date such expenses are incurred." (Emphasis added.) K.S.A. 40-3103(w).

GEICO takes the position that payment of substitution benefits is not required under K.S.A. 40-3103(w) where the services were performed by the injured party's spouse. Specifically, GEICO argues that because a spouse owes a common-law duty to provide financial and other support to the other spouse, the injured spouse has not "incurred" a legal obligation to pay for such services. Williams counters that nothing in the statute would prohibit payment of substitution benefits simply because the services were performed by the injured party's spouse. This requires us to interpret the term "incurred" as used in the statute.

Whenever interpreting a statute, the court's first step is to ascertain the Legislature's intent by simply reading the statutory language, giving ordinary meaning to common words. *Lozano v. Alvarez*, 306 Kan. 421, 423-34, 394 P.3d 862 (2017). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Hoesli v. Triplett, Inc*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

Both parties rely on the *Hephner* decision to support their respective positions. *Hephner* is the primary, if not sole case, in which the Kansas Supreme Court explored the propriety of paying substitution benefits for services provided by an injured party's family members. The undisputed facts in *Hephner* established that Tisha Hephner was

4

killed in an automobile accident in 1991. She was covered by an automobile insurance policy issued by Traders Insurance Company which contained the standard PIP provisions required by the KAIRA. Tisha was survived by her almost 4-year-old daughter Tiphani, who suffered from multiple disabilities. Prior to the accident, Tisha and Tiphani lived with Tisha's parents (Tiphani's maternal grandparents), and the maternal grandmother assisted with Tiphani's care while Tisha was at work. The grandparents assumed full-time, 24-hour-per-day, care for Tiphani after her mother's death and formally adopted her several months later. The grandmother died shortly thereafter. *Hephner*, 254 Kan. at 227.

The grandfather filed a lawsuit on Tiphani's behalf against Traders Insurance Company alleging its failure to pay the child for substitution benefits under the KAIRA for the services provided by the grandparents which Tiphani's mother would otherwise have provided. The Kansas Supreme Court ultimately ruled that Tiphani was required to prove a genuine economic loss, but it went on to note that the grandparents had performed services for Tiphani exceeding the limited assistance they had provided before her mother's death. Although the Supreme Court acknowledged that the question of whether Tiphani "actually incurred expenses or liability for expenses" was "obviously a close one," the court held that she had proved her case and that she was entitled to the substitution benefits. *Hephner*, 254 Kan. at 230-34. In reaching this result, the court observed that the language of K.S.A. 40-3103(w) did not exclude payment for substitution services performed by family members. The court noted that it was within the Legislature's power to limit the persons who could provide such services. 254 Kan. at 235.

The Legislature has not amended K.S.A. 40-3103(w) since the *Hephner* decision, leaving us with the presumption that the Legislature intended the statute to be interpreted as the court decided. See *In Re Adoption of G.L.V.*, 286 Kan. 1034, 1052, 190 P.3d 245 (2008).

Williams relies on *Hephner* for his proposition that since the language of K.S.A. 40-3103 does not limit payment for substitution benefits to those provided by nonfamily members, he is entitled to receive substitution benefits for the economic value of the extra services performed by his wife. But this argument oversimplifies the holding of *Hephner* by ignoring the Supreme Court's repeated emphasis on the lack of legal duty or obligation on the part of the family members—the grandparents—who provided such services. This point is repeated by the Supreme Court in *Hephner* at least five times, and must be considered the linchpin of its decisive interpretation of K.S.A. 40-3103(w). See 254 Kan. at 230-34

GEICO correctly points out that the claimed economic loss to the injured party must still be incurred and that term must be given its common and ordinary meaning. GEICO argues that since spouses, unlike other family members, have a preexisting statutory and common-law duty of mutual support, the assistance claimed here by Williams cannot be said to have been incurred due to his accidental injuries, but was rather the result of the preexisting marital relationship. We agree that *Hephner*, with its repeated emphasis on the lack of legal duty or obligation on behalf of the grandparents to care for their granddaughter after her mother's death, is clearly distinguishable and does not preemptively control application of K.S.A. 40-3103(w) in the instant case.

We can certainly envision family members who come forth or are thrust into a situation where another family member requires substitution services—adult children, siblings, stepparents, even aunts, uncles, cousins, and, as in *Hephner*, grandparents. But the common thread is that these providers are not under any legal duty or obligation to assist.

In contrast, the common law and societal mores have traditionally considered the marital relationship as a distinct and special category apart from the generic "family" relationship. Marriage has traditionally and legally been determined to create a

6

partnership of mutual benefits and obligations, not the least of which is the mutual obligation to provide support for each other. The thread of this mutual support obligation is woven through our statutory and common-law jurisprudence. The continuing support obligation lies at the heart of our civil laws governing domestic relations. See *Davis v. Nelson*, 227 Kan. 789, 794, 610 P.2d 587 (1980); *Gordon v. Gordon*, 218 Kan. 686, 691-92, 545 P.2d 328 (1976). Our Supreme Court has recognized that under Kansas probate law, a spouse's right to an elective share of a deceased spouse's estate is premised in part on the mutual duties of support which spouses owe, which survives even after death. See *In re Estate of Antonopoulos*, 268 Kan.178, 182-83, 993 P.2d 637 (1999). The criminal laws set forth yet another reflection of this mutual duty—it is undisputed that a person may be charged under K.S.A. 2016 Supp. 21-5606(a) for criminal nonsupport of a child *or spouse* in necessitous circumstances.

These statutory references draw breath from the common-law doctrine of necessaries. In *Dignity Care Home, Inc. v. Montgomery-Ryan*, No. 103,656, 2011 WL 420714, at *2 (Kan. App. 2011) (unpublished opinion), a panel of this court persuasively discussed the doctrine of necessaries in holding an elderly estranged husband liable for nursing home services rendered to his wife, despite the fact that the parties maintained separate finances and had long lived apart:

> "Kansas recognizes the doctrine of necessaries. Under the traditional common-law doctrine of necessaries, a husband who did not provide food, shelter, and medical services to his wife was liable to a third party who provided these necessaries to the wife. *St. Francis Regional Med. Center, Inc. v. Bowles*, 251 Kan. 334, 335, 836 P.2d 1123 (1992). In *Bowles,* the Kansas Supreme Court expanded this doctrine to apply equally to both spouses. 251 Kan. at 339-41."

In *Lindbloom v. Lindbloom*, 177 Kan. 286, 296, 279 P.2d 243 (1955), the Supreme Court reiterated the venerable principle that "[w]hen parties are married, they take each other for better or worse." Here, Williams was unable to care for himself for a period of

7

time and Mary provided necessary personal services for him as was required by the common-law duty of mutual support. This duty arose from the marital relationship itself and carried with it the corollary right to support from her spouse had the tables been turned. It is arguable that had she not provided such necessary assistance, requiring Williams to seek third-party assistance, Mary could have incurred liability to such third-party providers under the doctrine of necessaries.

Since the obligation of Mary to provide assistance for her husband was incurred as a result of the marital relationship itself, Williams did not incur, as a result of his accident, any economic obligation to reimburse Mary for her assistance, and he is not entitled to recover substitution benefits under K.S.A. 40-3103(w).

In reaching this conclusion, we are mindful of William's explicit arguments and implicit suggestion, and the district court's suggestion, that the nature of the marital relationship has evolved and changed and that the precedents relied upon are "somewhat dated" and of dubious continuing viability. Our Supreme Court has, indeed, recognized that the common law "changes and adjusts from time to time to new developments in social and economic life to meet the changing needs of a complex society." *Hoffman v. Daniel*, 189 Kan. 165, 168, 368 P.2d 57 (1962).

While times do change, it is not the function of this court to disregard sound precedent, nor to invade the policy-making function of the Legislature, nor to establish new parameters for the marital relationship. We find it unlikely that the Legislature would have intended to implement a fundamental modification of the concept of mutual marital support obligations in the context of the omission of any such reference in an automobile insurance statute.

The judgment of the district court awarding Williams substitution benefits in the amount of $2,625 is reversed.

8

\* \* \*

SCHROEDER, J., concurring:  I concur in the majority's opinion because I believe the statute and Kansas Supreme Court precedent require this result.  However, I write separately to emphasize the inequity created by this interpretation of the statute and to call upon the Legislature to amend K.S.A. 40-3103(w) to specifically allow substitution benefits for services rendered by a spouse, and the daily allowance of $25 should be increased since it has not changed since 1987. See L. 1987, ch. 173, § 1.

Prior to the accident, Royce prepared his own meals, did his own laundry, drove himself, cared for his personal hygiene, and administered his own medication.  After the accident, Mary provided these services and had Royce and Mary merely been cohabitating, Royce would have been entitled to substitution benefits for the services Mary provided.  Since Royce and Mary are married, however, he is not entitled to substitution benefits.  This creates an inequitable situation which actually punishes a couple for marrying instead of merely cohabitating.  If the Legislature amended K.S.A. 40-3103(w) to allow substitution benefits for services rendered by a spouse, this inequity would disappear.

Further, I note amending K.S.A. 40-3103(w) to specifically allow substitution benefits for services rendered by a spouse would ease the financial burden on poorer Kansans whose spouse is injured in an automobile accident.  As the law now stands, poorer Kansans may not be able to hire someone to provide ordinary and necessary services for an injured spouse and, as a result, the healthy spouse is hit with a double-whammy of financial hardship:  being forced to take time off of work to care for their spouse and not being compensated for their care.

9