No. 50,987

LESLIE O. DREILING, *Appellee,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant.*

(610 P.2d 611)

Opinion filed May 10, 1980.

*Lee Turner,* of Turner and Boisseau, Chartered, of Wichita, argued the cause, and *Christopher Randall,* of the same firm, was with him on the brief for the appellant.

*Richard D. Coffelt,* of Martin & Coffelt, of Hays, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: Defendant State Farm Mutual Insurance Company appeals from a judgment of the trial court awarding plaintiff Leslie O. Dreiling personal injury protection (PIP) benefits under the Kansas automobile injury reparations act (K.S.A. 1979 Supp. 40-3101 *et seq.*).

The sole issue on appeal is whether the trial court erred in awarding PIP benefits to plaintiff, who was injured while operating a borrowed automobile, but who, at the time of the accident, owned a registered, uninsured and inoperable automobile.

The facts are as follows. In 1976, plaintiff, a resident of Hays, Kansas, purchased a 1970 Chevrolet Malibu automobile. At that time plaintiff secured insurance on the vehicle, registered the

vehicle, and operated it on the highways of the state. At some point in 1976 plaintiff lost his driving privileges and attempted to sell the vehicle. When his insurance lapsed in 1976 he advised the insurance agent that he was trying to sell the vehicle. In 1977, plaintiff regained his driving privileges and again operated the vehicle. Plaintiff states he obtained automobile liability insurance from another company, but does not know when or from whom such insurance was obtained.

In October of 1977, the vehicle developed transmission problems which rendered it inoperable. The vehicle was towed to plaintiff's residence where it remained for two months. Later it was towed to a friend's house. The vehicle was not repaired until June of 1978. At some point between October of 1977 and February 3, 1978, the vehicle was no longer insured, but there is no evidence of dates or circumstances involved therein. On February 3, 1978, plaintiff suffered injury while operating a motor vehicle borrowed from Denise Morgan. At the time of the accident plaintiff's Malibu was in current registration and bore current license tags. The Morgan vehicle was insured by defendant State Farm Mutual. Plaintiff then claimed PIP benefits from the Morgan policy. State Farm Mutual denied the claim on the ground plaintiff was not entitled to same pursuant to the Kansas automobile injury reparations act, inasmuch as he owned a motor vehicle for which liability insurance was required. This action was commenced as a result of the denial of coverage.

The trial court found in favor of plaintiff on the ground that insurance was not required for plaintiff's inoperable vehicle. State Farm Mutual appeals from said judgment. The issue raised is one of first impression.

K.S.A. 1979 Supp. 40-3102 states the purpose of the act as follows:

"The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein."

K.S.A. 1979 Supp. 40-3109, in relevant part, provides:

"(a) A self-insurer or the insurer of the owner of a motor vehicle covered by a policy of motor vehicle liability insurance meeting the requirements of this act shall pay any personal injury protection benefits which are required to be provided by this act or in such owner's policy of motor vehicle liability insurance for any injury:

"(4) sustained in this state by any other person while occupying such motor vehicle or, if a resident of this state, while not an occupant of such motor vehicle, if the injury is caused by physical contact with such motor vehicle and the injured person is not himself the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy is required under this act."

## K.S.A. 1979 Supp. 40-3104 provides, in relevant part:

"(a) Every owner shall provide motor vehicle liability insurance coverage in accordance with the provisions of this act for every motor vehicle owned by him or her, unless such motor vehicle is included under an approved self-insurance plan as provided in subsection (d) or is expressly exempted from the provisions of this act.

"(b) An owner of an uninsured motor vehicle shall not permit the operation thereof upon a highway or upon property open to use by the public, unless such motor vehicle is expressly exempted from the provisions of this act.

"(c) No person shall knowingly drive an uninsured motor vehicle upon a highway or upon property open to use by the public, unless such motor vehicle is expressly exempted from the provisions of this act."

Said statute also provides various penalties for its violation, including criminal prosecution and suspension of driving privileges.

## K.S.A. 1979 Supp. 40-3103(m) defines "motor vehicle" as:

"(m) 'Motor vehicle' means every self-propelled vehicle of a kind required to be registered in this state, including any trailer, semitrailer or pole trailer designed for use with such vehicle, but such term shall not include a motorized bicycle."

## K.S.A. 1979 Supp. 40-3118 (amended since the date of the accident, but said amendments not relevant to issues herein) provides:

"(a) No motor vehicle shall be registered in this state unless the owner at the time of registration, has in effect a policy of motor vehicle liability insurance covering such motor vehicle, as provided in this act, or is a self-insurer thereof. As used in this section, the term 'financial security' shall mean and include such policy or self-insurance. The director shall require that the owner certify that he or she has such financial security, and *the owner of each motor vehicle registered in this state shall maintain financial security continuously throughout the period of registration.* When an owner certifies that such financial security is a motor vehicle liability insurance policy meeting the requirements of this act, the director may require that the owner or owner's insurance company produce records to prove the fact of such insurance. Failure to produce such records shall be prima facie *evidence that no financial security exists with regard to the vehicle concerned.* It shall be the duty of insurance companies, upon the request of the director, to verify the accuracy of any owner's certification. Failure by an insurance company to deny coverage within twenty (20) days may be considered by the director as an acknowledgment that the information as submitted is correct." (Emphasis added.)

Said statute further provides that upon cancellation, nonrenewal, etc., of a liability policy the insurer is to notify the director of vehicles of the termination. Various procedures are then set forth for the director to revoke the registration and gain custody of the license tags. Sanctions, including loss of driving privileges and criminal prosecution, may also result under certain circumstances.

The act is complex legislation intended to accomplish its purpose. In *Farm & City Ins. Co. v. American Standard Ins. Co.*, 220 Kan. 325, 552 P.2d 1363 (1976), the purpose of the act was stated as follows in Syllabus ¶1:

"The purpose of the Kansas automobile injury reparations act is to make personal injury protection insurance mandatory by requiring every owner of a motor vehicle obtain first party coverage for personal injury protection benefits payable by his own insurance company."

Registration of motor vehicles and the maintenance of liability insurance thereon are inexorably bonded together by the act. By so doing the likelihood of abidance with the act is greatly increased, as the display of current license tags provides visual evidence of compliance, and the absence of license tags or the display of outdated tags on a vehicle does not often long go unnoticed.

In *Farm and City Ins. Co.* at 333-334, this court interpreted certain provisions of the act and stated:

"As to our present case we have a provision in the act requiring the *owner* of the accident vehicle (Zimmerman) to *insure himself and any passenger* in such motor vehicle. (40-3107[f].) We have a further provision in the act requiring any *person who owns a motor vehicle* (Tiller) to obtain insurance to insure himself both *as an owner and as an occupant of a motor vehicle.* (40-3109[a][1].) At first blush these appear to be separate provisions which result in duplicate coverage, and justify equitable pro-rata sharing of the expense of benefits due Tiller's survivors.

"However, section 40-3109(a)(4) of the act, relating to coverages for both occupants and pedestrians, contains a qualification on such coverage or coverages. The last phrase of this section imposes this qualification, ' . . . and the injured person is not himself the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy is required under this act.' Because of the sentence structure and punctuation supplied by the legislature this phrase would appear to qualify the coverage as to pedestrians only. In other words, in order for a policy issued to the owner of the accident vehicle to extend coverage to a pedestrian struck by the owner the pedestrian must not own another vehicle covered by the act.

"American Standard, the insurer of the present accident vehicle, contends this phrase of qualification was intended to apply to both an occupant and a pedes-

trian. American Standard reads the qualifying phrase in 40-3109(a)(4) as if a comma and the word 'provided' were inserted after the word 'and'. These suggested additions to punctuation and phraseology would clearly show that the final phrase was meant to modify both of the preceding clauses conjoined by the word 'or'. Under such a construction both an occupant and a pedestrian would be required to look to their own insurance company for payment of PIP benefits if they owned another vehicle covered by the act.

"Section 40-3109(a)(1) clearly requires the insurer of the owner of a motor vehicle to pay its insured for any injury suffered while an occupant of another motor vehicle or while he is a pedestrian. A construction of paragraph (4) of sub-section (a) as urged by American Standard would place the final modifying clause of that sub-section in harmony with paragraph (1) of sub-section (a).

"This construction of the two provisions would be in line with the observations of this court in *Manzanares v. Bell,* supra, *i.e.,* that the act makes provision for first party coverage and direct benefits coming from an injured person's own insurance company. We further note that such a construction is in harmony with the provisions of 40-3109(a) paragraph (3) relating to injuries sustained by relatives of the owner residing in the same household. Such relatives are not covered by the owner's insurance if such injured relative is himself the owner of a motor vehicle required to be insured under the act.

"Throughout the act it appears the legislature intended every owner of a motor vehicle to carry his own PIP insurance and to look to his own company for payment. Insurance is made mandatory for each owner of a motor vehicle. In the act the legislature made certain that every owner of a vehicle could obtain the required PIP insurance for it set up an assigned claims plan. See section 40-3116. Under sub-section (c) of section 40-3116 the legislature sought to require compliance with the mandatory insurance provisions by providing that if you fail to have a policy in effect and own a motor vehicle for which insurance is required you are not entitled to personal injury protection benefits."

K.S.A. 1979 Supp. 40-3109 specifies the circumstances under which an insurer must pay PIP benefits. Is plaintiff excluded therefrom by subsection (a)(4) by being "himself the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy is required under this act"? We must conclude that he is excluded.

Pursuant to K.S.A. 1979 Supp. 40-3118(a), plaintiff was required to maintain continuous insurance on his vehicle throughout each period of registration. This he did not do. K.S.A. 1979 Supp. 40-3109 excludes from PIP benefits those injured by vehicles of others who themselves own motor vehicles required to be insured by the act. This statute does not limit the exclusion to those who have insurance—it broadens it to those required to have insurance. Repeatedly, throughout the act, sanctions are imposed for noncompliance therewith. The result reached by the trial court and urged herein by plaintiff is wholly inconsistent

with the act, as it would subsidize noncompliance. If plaintiff had complied with the act he would be entitled to PIP benefits from his own insurer—not the insurer of the Morgan vehicle. His failure to comply with the act cannot create PIP benefits coverage for him in the Morgan policy. To hold otherwise would be contrary to the purposes of the act and the provisions therein intended to assure compliance.

We are not unmindful that the State of Florida, in rather analogous factual situations, has reached a different result. See *Ward v. Florida Farm Bureau Cas. Ins.,* 375 So.2d 898 (Fla. App. 1979), and *Malen v. American States Ins. Co.,* 376 So.2d 473 (Fla. App. 1979). Florida may be distinguished, as the Florida Automobile Reparations Reform Act (Fla. Stat. § 627.730 *et seq.* [1979]), while similar to our own act, differs in many respects. Florida has no registration or security requirements for motor vehicles which are neither operated on the highways of Florida nor maintained for that purpose. See *Tapscott v. State Farm Mutual Automobile Ins. Co.,* 330 So.2d 475 (Fla. App. 1976). No requirement for continuous insurance coverage during registration has been noted in the Florida act.

We must conclude that the trial court erred in awarding PIP benefits to plaintiff. The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.