(996 P.2d 349)

No. 82,671

JOHN MORRIS, *Appellant,* v. AMERICAN STANDARD INSURANCE COMPANY, *Appellee.*

Opinion filed January 28, 2000.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellant.

*Leo L. Logan* and *Casey L. Griffith,* of Boddington & Brown, Chtd., of Kansas City, for appellee.

Before JUSTICE EDWARD LARSON, presiding, Jack L. Burr, District Judge, assigned, and DAVID L. STUTZMAN, District Judge, assigned.

LARSON, J.: This appeal involves the question of the extent of insurance coverage for a nonresident who drives his vehicle into Kansas, parks it on private property, subsequently drives a Kansas resident's motor vehicle, has an accident, and is injured. The question we must resolve is this: Does the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.,* require the insurer of the Kansas vehicle or the insurer of the nonresident's vehicle to pay personal injury protection (PIP) benefits?

*Facts*

The facts are not in dispute. On June 30, 1998, John Morris was the owner of a 1996 Jeep Cherokee which was titled and registered in Missouri. Morris drove his vehicle into Kansas on the public highways and roads and parked it on private property in Ottawa, Kansas. Later on the same date, Morris was driving a 1995 Jeep owned by Philip Carmack when he was involved in an automobile accident in Kansas. At the actual time of the accident, Morris' 1996 Jeep was still parked on private property in Kansas.

Morris' 1996 Jeep was insured under a Missouri insurance policy issued by Progressive Classic Insurance Company or Progressive

Northwestern Insurance Company (Progressive). Progressive is authorized and admitted to transact business in Kansas. However, Morris' policy from Progressive does not contain a specific endorsement for PIP benefits because such is not required in Missouri. Whether Progressive was required to provide PIP coverage to Morris under the policy covering Morris' 1996 Jeep at the time of the accident in this case is central to this appeal.

The 1995 Jeep owned by Carmack that Morris was driving at the time of the accident was insured under a policy issued by American Standard Insurance Company. Morris submitted a claim for PIP benefits to American Standard, but American Standard denied it had any obligation to provide coverage. American Standard claimed Morris was the owner of a motor vehicle for which insurance coverage was required in Kansas under the KAIRA and that American Standard was, therefore, not responsible for paying any benefits to him.

The trial court agreed with American Standard and granted its motion for summary judgment, from which Morris now appeals.

There is no question that Morris is entitled to PIP benefits from one insurer or the other. The question, therefore, is: Which one of the two carriers is required to provide such benefits?

*Standards of Review*

Resolution of this issue requires statutory interpretation of the KAIRA, which is an issue of law over which this court exercises unlimited review. In construing statutes, the intent of the legislature is paramount and is determined from a general consideration of the entire act, with effect to be given to every part of the act wherever possible. As far as practicable, it is the duty of the court to reconcile the various provisions of the Act to make them harmonious, consistent, and sensible. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997).

In determining legislative intent, the court may consider the history of the legislation, the purpose to be accomplished, and the effect the statute will have under the various constructions suggested. *State v. Le*, 260 Kan. 845, Syl. ¶ 3, 926 P.2d 638 (1996). "The fundamental rule of statutory construction, to which all others

are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases, or clauses at some place in the statute must be omitted or inserted." *Farm & City Ins. Co. v. American Standard Ins. Co.*, 220 Kan. 325, Syl. ¶ 3, 552 P.2d 1363 (1976).

When a statute is susceptible to more than one construction, it should be given the construction which gives expression to its intent and purpose, even though such a construction may not be within the strict literal wording of the statute. *Manzanares v. Bell*, 214 Kan. 589, Syl. ¶ 15, 522 P.2d 1291 (1974). By the same token, when a statute is plain and unambiguous, the appellate court must give effect to the intent of the legislature as expressed instead of determining what the law should or should not be. *West v. Collins*, 251 Kan. 657, 661, 840 P.2d 435 (1992).

*Statutory provisions*

Numerous provisions of the KAIRA are relevant to the arguments of the parties and the reasoning of the trial court in this case. We begin with K.S.A. 40-3102, which sets forth the purpose of the KAIRA as follows:

"The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein."

To accomplish this purpose, the KAIRA provides for PIP benefits to be included in every policy of motor vehicle liability insurance. K.S.A. 40-3107(f). PIP benefits mean "the disability benefits, funeral benefits, medical benefits, rehabilitation benefits, substitution benefits and survivors' benefits, required as provided in motor vehicle liability insurance policies pursuant to this act." K.S.A. 1998 Supp. 40-3103(q).

K.S.A. 1998 Supp. 40-3104(a) states: "Every owner shall provide motor vehicle liability insurance coverage in accordance with the provisions of this act for every motor vehicle owned by such person" with certain nonrelevant exceptions. The Act's policy of requiring all motor vehicles in Kansas to be insured is further revealed by K.S.A. 1998 Supp. 40-3104(b), which states: "An owner

of an uninsured motor vehicle shall not permit the operation thereof upon a highway or upon property open to use by the public, unless such motor vehicle is expressly exempted from the provisions of this act," and by K.S.A. 1998 Supp. 40-3104(c), which states: "No person shall knowingly drive an uninsured motor vehicle upon a highway or upon property open to use by the public, unless such motor vehicle is expressly exempted from the provisions of this act." Penalties, including loss of driving privileges and criminal prosecution, are provided in the KAIRA for the failure to maintain the required insurance. K.S.A. 1998 Supp. 40-3104(g), (h), (i), and (j).

Of prime importance to the facts of this case is K.S.A. 40-3106, which specifically addresses nonresident motorists and includes a provision designed to increase compliance with the Act for those who operate vehicles in Kansas:

"(a) A motor vehicle owned by a nonresident shall not be operated in this state upon a highway or upon property open to use by the public, unless a motor vehicle liability insurance policy meeting the requirements of K.S.A. 40-3107, and amendments thereto, is in effect for such vehicle, or such nonresident has qualified as a self-insurer. . . . Whenever the privilege of a nonresident operating a motor vehicle in this state is suspended for failure of the owner to maintain financial security, in effect, the director shall report such violation to the motor vehicle administrator in the state wherein the vehicle is registered. . . .

"(b) Every insurance company authorized to transact the business of motor vehicle liability insurance in this state shall file with the commissioner as a condition of its continued transaction of such business within this state a form approved by the commissioner declaring that its motor vehicle liability policies, wherever issued, shall be deemed to provide the insurance required by K.S.A. 40-3107, and amendments thereto, when the vehicle is *operated* in this state." (Emphasis added.)

The provisions of K.S.A. 40-3107, referenced in 40-3106, require policies to provide insurance to the person named and any other person, as insured, using such vehicle with the express or implied consent of such named insured, "against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of any such vehicle within the United States of America or the Dominion of Canada, subject to the limits stated in such policy:" K.S.A. 40-3107(b). Insurance policies covered by K.S.A.

40-3107 are also required to contain an agreement or endorsement that the insurance is provided in accordance with the coverage required by the Act, and shall, among other things, include personal injury protection benefits to the named insured, to persons operating the insured motor vehicle, and to passengers for loss sustained by any such person as a result of injury, not to exceed the limits prescribed for such benefits. K.S.A. 40-3107(d), (f).

Under the above provisions, K.S.A. 40-3106(a) made it unlawful for Morris to drive his 1996 Jeep into Kansas unless it was insured by a policy that complies with the obligations of K.S.A. 40-3107. And, by virtue of K.S.A. 40-3106(b), Progressive's policy covering Morris' Missouri-registered Jeep is deemed to provide the necessary insurance when the vehicle is operated in the State of Kansas.

An additional provision of the KAIRA, K.S.A. 40-3109, is also of prime importance. It relates to liability for payment by two or more insurers and provides that

"the insurer of the owner of a motor vehicle covered by a policy of motor vehicle liability insurance meeting the requirements of the act shall pay any personal injury protection benefits which are required to be provided by this act . . . sustained in this state by any other person while occupying such motor vehicle [provided] the injured person is *not* the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy is required under this act." (Emphasis added.) K.S.A. 40-3109(a)(3).

Morris *is* the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy is required under the KAIRA, but this fact alone does not resolve this case because of the "operated" wording of K.S.A. 40-3106.

Although *Farm & City*, 220 Kan. 325, Syl. ¶ 1, involved residents rather than nonresidents, that case explained: "The purpose of the Kansas automobile injury reparations act is to make personal injury protection insurance mandatory by requiring that every owner of a motor vehicle obtain first party coverage for personal injury protection benefits payable by his own insurance company." *Farm & City* involved an owner of an insured automobile who died in an automobile accident while riding as a passenger in another insured automobile, and the philosophy of the KAIRA was stated in the following manner:

"Throughout the act it appears the legislature intended every owner of a motor vehicle to carry his own PIP insurance and to look to his own company for payment. Insurance is mandatory for each owner of a motor vehicle. In the act the legislature made certain that every owner of a vehicle could obtain the required PIP insurance for it set up an assigned claims plan. See section 40-3116. Under sub-section (c) of section 40-3116 the legislature sought to require compliance with the mandatory insurance provisions by providing that if you fail to have a policy in effect and own a motor vehicle for which insurance is required you are not entitled to personal injury protection benefits." 220 Kan. at 334.

*Farm & City*'s interpretation of K.S.A. 40-3109(a)(3) correctly focuses upon the issue of whether Morris is the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy was required under the Act, so that he would then be required to look to his own insurer (Progressive) rather than American Standard, notwithstanding the restrictive "operated" language of K.S.A. 40-3106.

*The trial court's decision*

The trial court phrased the issue in the following manner: "[I]s a nonresident owner of an automobile parked in Kansas required to have vehicle liability insurance?"

The court quoted and found most applicable K.S.A. 40-3106(a) (the "nonresident operating a motor vehicle in this state" provision); K.S.A. 40-3106(b) (the provision respecting the contents of insurance policies issued by companies transacting motor vehicle liability insurance business in Kansas); and K.S.A. 40-3102 (stating the purpose of the act as "compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles").

Because both parties had directed the court's attention to *Dreiling v. State Farm Mut. Auto. Ins. Co.*, 227 Kan. 851, 610 P.2d 611 (1980), the court noted that although *Dreiling* primarily found the obligation to insure was on the "resident" owner of a motor vehicle "registered in the State of Kansas," it did provide some guidance. The court quoted the following provision from *Dreiling*:

"Registration of motor vehicles and the maintenance of liability insurance thereon are inexorably bonded together by the act. By so doing the likelihood of abidance with the act is greatly increased, as the display of current license tags

provides visual evidence of compliance, and the absence of license tags or the display of outdated tags on a vehicle does not long go unnoticed." 227 Kan. at 854.

The trial court admitted that Morris was correct in stating there was no requirement for every owner of every motor vehicle to be insured, but found that *Dreiling* made it clear that every owner of every motor vehicle " 'required to be registered in Kansas' must maintain insurance on the vehicle during the period of registration." The trial court also stated that it is clear our statutes prohibit a motor vehicle owned by a nonresident to be operated in this state upon a highway or upon property open to use by the public unless the owner maintains insurance on the vehicle.

The trial court was not impressed by Morris' argument that a nonresident's parked vehicle would no longer have an insurance requirement. Ultimately, the trial court concluded: "Like the residents of Kansas, plaintiff's legally licensed vehicle having been driven into the State was required to maintain the required insurance throughout the visit to our State." With this finding, the trial court found in favor of American Standard and held Morris was obligated to look to his own motor vehicle insurance policy (Progressive) for payment of his PIP benefits.

*Morris' contentions*

In arguing that American Standard was required to pay him PIP benefits instead of Progressive, Morris raises several points. Morris stresses that the coverage of K.S.A. 40-3107 is only required to be incorporated into out-of-state insurance policies under K.S.A. 40-3106(b) "when the vehicle is operated in this state." He argues that this language of K.S.A. 40-3106(b) means exactly what it says and requires nothing more. He acknowledges *Dreiling*, but concludes that *Dreiling* is not dispositive because, while resident owners of motor vehicles, like Dreiling, are required to maintain insurance throughout the period of registration, nonresident owners of motor vehicles are only required to have such insurance meeting the requirements of K.S.A. 40-3107 when their motor vehicles are actually being "operated in this state upon a highway or upon property open to use by the public." See K.S.A. 40-3106(a).

Morris notes that the KAIRA does not treat residents and non-residents alike in all respects, see, *e.g.*, 40-3109(a)(3) (allowing only resident pedestrians to recover for injury sustained through contact with an insured vehicle), and asserts that the limiting language of K.S.A. 40-3106 is one such instance of treating residents and non-residents differently.

The Kansas Insurance Department wrote a letter to American Standard expressing the opinion that because Morris was not operating his out-of-state vehicle at the time of the accident, he had no insurance obligation under K.S.A. 40-3106 at the time of the accident. This letter utilizes the restrictive construction of "operating" an automobile found in *Leiker v. State Farm Mutual Automobile Ins. Co.*, 193 Kan. 630, 635, 396 P.2d 264 (1964). Morris reminds the court that an administrative agency's interpretation of the statutes it is charged with enforcing, though not binding, is entitled to judicial deference and is accorded great weight where not erroneous as a matter of law. See *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 166, 815 P.2d 66 (1991).

Finally, Morris asserts that his interpretation of the KAIRA avoids the necessity of establishing whether the nonresident's out-of-state vehicle was located in or outside of Kansas at the time of an unrelated accident in a separate vehicle (*e.g.*, as where a nonresident's spouse drives the nonresident's own vehicle back out of Kansas to go home or to go to work while the nonresident uses another car here). He notes that the location of the out-of-state vehicle could be especially problematic in the Kansas City area, where many individuals routinely cross the state line between Kansas and Missouri on a daily or even more frequent basis.

*American Standards' contentions*

American Standard notes that the KAIRA is to be liberally construed to achieve the legislative purpose of providing a means of promptly compensating persons for accidental injury arising out of the ownership, operation, maintenance, or use of motor vehicles. K.S.A. 40-3102; see *Garrison v. State Farm Mut. Auto. Ins. Co.*, 258 Kan. 547, Syl. ¶ 1, 907 P.2d 891 (1995). To this end, American Standard encourages the court to look past the literal wording of

K.S.A. 40-3106 to give effect to the intent and purpose of the legislation as stated in K.S.A. 40-3102. American Standard particularly emphasizes that K.S.A. 40-3102 clearly states that one of the purposes of the Act is to provide a means of compensation for bodily injury arising from "ownership" of motor vehicles. American Standard also points to the language of *Farm & City*, 220 Kan. at 334, that "[i]nsurance is made mandatory for each owner of a motor vehicle" and that "it appears the legislature intended every owner of a motor vehicle to carry his own PIP insurance and to look to his own company for payment." Because Morris was the owner of a motor vehicle operated/driven into Kansas and located in Kansas at the time of the accident, American Standard asserts that the legislature intended Morris to have his vehicle insured in accordance with K.S.A. 40-3107 and to look to his own insurance company for coverage.

American Standard agrees with the trial court's analysis that the requirement for nonresident drivers to have insurance does not lapse just because the vehicle is not actually being driven at the time of an accident. American Standard asserts that its interpretation has the benefits of encouraging compliance with the Act and of treating resident and nonresident owners of motor vehicles (when the nonresident's car is still located here and thus likely to be operated here again) in the same manner when they are involved in motor vehicle accidents—both would have to look to their own insurance company for coverage.

In response to Morris' argument that American Standard's interpretation creates the complication of having to litigate whether the nonresident's vehicle was located in Kansas at the time the nonresident is involved in an accident, American Standard argues that Morris' interpretation has its own factual complication of requiring a determination of whether a vehicle owned by a nonresident was actually being driven at the time of an unrelated accident. A nonresident's family member, for instance, might have been driving the nonresident's car in Kansas around the time the nonresident is borrowing or is a passenger in another vehicle involved in an accident—if so, then the nonresident's car was being operated

at the time of the accident and was required to be insured in accordance with K.S.A. 40-3107.

Finally, American Standard argues that its interpretation is required to avoid a violation of equal protection rights. American Standard did not raise any equal protection arguments in the district court, see *State v. Shears*, 260 Kan. 823, Syl. ¶ 8, 925 P.2d 1136 (1996) (constitutional grounds raised for first time on appeal not properly before the court). And, in any event, American Standard's suggestion that Morris' interpretation of KAIRA would violate the Equal Protection Clause is not convincing. Because the issue was not raised below, the proper interpretation of the statute should be decided on the basis of the statutory language and the intention of the legislature; there is no need to further discuss the constitutional issue.

*Morris' counterarguments*

Morris counters American Standard's primary arguments by stating, first, that the accident did not arise out of the ownership of Morris' Missouri-registered vehicle but, instead, out of the operation of a separate vehicle insured by American Standard. And, second, regardless of the general statement of purpose in K.S.A. 40-3102, the language of K.S.A. 40-3106(b) specifically states the circumstance under which the out-of-state policy on a nonresident's vehicle is deemed to provide the coverage of K.S.A. 40-3107—and that is only "when the vehicle is operated in this state." The Kansas Legislature does not have the authority, nor did it purport through the KAIRA, to require all owners of all motor vehicles everywhere to have KAIRA-compliant insurance at all times. Under its police power, a state may regulate travel upon its public highways; the right to operate a motor vehicle upon the public highway is a privilege rather than a natural right, and such privilege is subject to reasonable regulation. *Manzanares*, 214 Kan. at 600-01. Morris argues that whatever may be the actual constitutional limits of this police power, the Kansas Legislature chose to limit the requirement of KAIRA-compliant insurance to those instances where nonresidents operate their vehicles in Kansas,

rather than to instances where the vehicle is simply located in this state with the potential of being operated here.

*Kansas cases*

The overriding policy of the KAIRA of requiring injured parties to first look to their own motor vehicle insurance coverage was set forth in *Farm & City* and need not be repeated. Additionally, *Farm & City* made clear the KAIRA's policy of requiring that motor vehicle insurance coverage be maintained and of encouraging compliance with the Act by denying PIP benefits to those who fail to comply with the Act's requirements.

There is no case directly on point regarding the precise issue in our case; however, both parties point to *Dreiling*, which we will discuss in more detail. The issue in *Dreiling* was whether a person who was injured while operating a borrowed car was entitled to PIP benefits under that car's policy given that, at the time of the accident, such person owned a car registered in Kansas but one that was uninsured and inoperable. In concluding that the injured party was not entitled to PIP benefits under the policy covering the borrowed vehicle, the Kansas Supreme Court emphasized the fact that every owner of a motor vehicle is required to provide liability insurance in accordance with the Act and that, for any vehicle registered in Kansas, there must be in effect throughout the period of registration a policy of insurance in accordance with the Act. See K.S.A. 1998 Supp. 40-3118(a), (e).

The *Dreiling* opinion quoted at length from *Farm & City*, where the court discussed the policy of the Act that every owner of a motor vehicle must carry his or her own PIP coverage and should look to his or her own insurance company for payment. Because Dreiling was himself the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy was required under the Act, the court concluded that he was excluded by what is now K.S.A. 40-3109(a)(3) from recovering under the policy covering the borrowed car. Had Dreiling either canceled his registration and surrendered his tags, signalling his intention not to operate his car upon Kansas roads, or complied with the Act and purchased insurance for his vehicle, he would have been able to recover PIP

benefits. Because he did not comply with the Act, he was not entitled to PIP benefits. The court noted that the Act provides various sanctions for noncompliance and stated that to allow Dreiling to receive PIP benefits under the circumstances would be to "subsidize noncompliance." 227 Kan. at 855-56.

In comparing the philosophy of *Dreiling* to this case, the trial court here reasoned that, just as Dreiling was required to have in effect a policy of insurance throughout the period of registration, Morris was required to have in effect a policy of insurance in accordance with the Act throughout his stay in Kansas. The trial court found it unbelievable that the legislature would intend that the requirement of insurance applicable to a nonresident motorist bringing a vehicle into Kansas and driving or parking it would lapse the moment it was stopped or off the public roads. Morris' out-of-state registration was active and, having driven his car into Kansas, the trial court felt it only logical to assume that the intent remained to again operate the car upon Kansas roadways, even if only to return to Missouri. As such, the trial court logically believed that Morris was the owner of a vehicle for which insurance was required under the KAIRA and that he could not, therefore, recover PIP benefits from the insurer of the vehicle he was driving at the time of the accident.

*Legislative History*

In an attempt to gain additional insight, we have reviewed the legislative history of K.S.A. 40-3106.

K.S.A. 40-3106 was enacted with the passage of S.B. 918 (1974). See L. 1974, ch. 193, § 6. That bill also included various other additions and changes to Kansas' no-fault automobile insurance law, now called KAIRA. See *Manzanares*, 214 Kan. at 591-97 (discussing the bill and its provisions). The legislative committee comments surrounding the bill focused mostly on the legislature's intention to make the Act constitutionally sound in anticipation of review by the Kansas Supreme Court, which occurred in *Manzanares*. *Manzanares* was decided after the bill was made law and upheld the constitutionality of the Act. See Minutes of the Senate Committee on Commercial and Financial Institutions, January 30,

1974 (with attached Position Paper by the Kansas Trial Lawyers Association); Revised Supplemental Information on Senate Bill 918, as Reported by House Committee of the Whole, 1974 Session, by Legislative Research Department.

The Act was strengthened by H.B. 2490 (1977). One of the amendments made to the Act by H.B. 2490 was the addition to K.S.A. 40-3106(a) of the language "Whenever the privilege of a nonresident operating a motor vehicle in this state is suspended for failure of the owner thereof to maintain financial security, in effect, the director shall report such violation . . . ." L. 1977, ch. 164, § 2. H.B. 2490 also added many of the penalties currently found in K.S.A. 1998 Supp. 40-3104(h) applicable to residents and nonresidents, including a provision to suspend the driving privileges of a nonresident driver operating a motor vehicle in this state who is involved in an accident where it is revealed that the driver failed to have in effect the mandatory insurance. See K.S.A. 1998 Supp. 40-3104(h)(1)(C) and (D).

The comments surrounding H.B. 2490 noted that the bill was prompted by concern over the substantial number of motorists on Kansas' highways who were driving without insurance. See Minutes of the Senate Committee on Commercial and Financial Institutions, March 17, 1977; Supplemental Information on HOUSE BILL 2490 as Amended by House Committee on Insurance, 1977 Session, by Legislative Research Department. The comments note that "the purpose of this bill was to tighten up enforcement of the automobile no-fault insurance laws," including the use of added penalties for noncompliance. See Minutes of the Senate Committee on Commercial and Financial Institutions, March 17, 1977; Minutes of the House Committee on Insurance, February 23, 1977. Steven Wiechman, the acting Director of the Division of Motor Vehicles, was noted as commenting to the Senate Committee on Commercial and Financial Institutions that the bill was intended to make clear that "the insurance coverage required by law is continuous coverage." See Committee Minutes, March 17, 1977.

*Analysis*

As we analyze the specific arguments, which were well made by both parties, it is readily apparent that the nature and extent of our view of the overall policy of the KAIRA will, to a large degree, determine the result we reach. See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997); *In re Estate of Koch*, 18 Kan. App. 2d 188, 215, 849 P.2d 977, *rev. denied* 253 Kan. 858 (1993). If we look only to the legislative choice of the word "operated" in K.S.A. 40-3106 and the interpretation of the term "operating" stated in *Leiker*, 193 Kan. at 635, Morris' position can be sustained. (*Leiker* did not interpret 40-3106, but did construe the term "operation" in an insurance policy.) If, however, we look to the overall intent of the KAIRA, the wording of K.S.A. 40-3109(a)(3), the purposes of the act in K.S.A. 40-3102, and the overriding legislative desire of providing first-party insurance coverage, then the affirmance of the result reached by the trial court is required. We strongly believe the latter analysis and result is the one we must reach.

It is our responsibility to give effect to the intent of the legislature. The legislature intended that any vehicles operated in this state are to be covered by insurance in accordance with K.S.A. 40-3107.

When we look at the language of the entire Act and the background of the legislation described, it clearly requires continuous coverage and the use of penalties as a means of encouraging compliance with the act to decrease the number of uninsured drivers on Kansas roadways. K.S.A. 40-3106 requires nonresidents to have a compliant policy "in effect for such vehicle" while operating such vehicle in this state.

We share the trial court's belief that the legislature intended for these policies of insurance to be and remain in effect and not to suddenly go "out of effect" during the periods when the vehicle might be stopped or parked in Kansas with the intention of being operated again on our roadways. The second sentence of K.S.A. 40-3106(a) speaks of "maintaining" financial security and states that "[w]henever the privilege of a nonresident operating a motor

vehicle in this state is suspended for failure of the owner to maintain financial security, in effect, the director shall report such violation to the motor vehicle administrator in the state wherein the vehicle is registered." This language implies that the legislature conceived of the insurance required for nonresidents as being maintained in an ongoing fashion, rather than only during periods of actual driving of the vehicle on a Kansas roadway.

When one looks to the wording of K.S.A. 40-3109(a)(3), it is clear to us that Morris is "the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy is required under this act." This determination is not changed by the "operate" wording of K.S.A. 40-3106.

The trial court's interpretation has a benefit to all drivers of vehicles by encouraging and compelling compliance with the KAIRA at any time that a vehicle is in this state and has the potential of being operated here.

The trial court's interpretation treats resident and nonresidents in the same manner when they are involved in motor vehicle accidents while owning a car required to be insured under the KAIRA. Each must be required to look to their own insurance coverage.

Given the legislative history and legislative intent described earlier in this opinion, we hold the trial court reached the correct result.

Affirmed.