### MICHIGAN TRUST CO. v. CHAPIN.

1. Husband and Wife—Contract as to Services—Public Policy —Fraudulent Conveyances.

An agreement whereby a husband is to pay to his wife a specified sum per year for her services as housekeeper is contrary to public policy, and a claim founded thereon will not support a conveyance to the wife as against the rights of creditors.

2. Partnership—Homestead.

One member of a firm cannot acquire a homestead interest in partnership property.

3. Partnership—Fraudulent Conveyances—Rights of Attaching Creditor—General Assignment.

An attachment creditor of a partnership may follow the interest of one of the firm in the partnership realty into the hands of a fraudulent grantee, notwithstanding the fact that such partner has withdrawn from the firm, and those succeeding to the business have assigned for the benefit of creditors.

Appeal from Montcalm; Dodds, J., presiding. Submitted June 12, 1895. Decided September 26, 1895.

Bill by Seymour B. Gorham, as general assignee of Clarence W. Chapin and Merrick W. Chapin, against Clarence W. Chapin, Alice B. Chapin, and Jacob Neff, to subject certain lands to the purposes of the assignment. The assignee having resigned, the Michigan Trust Company, as receiver, was substituted as complainant. From a decree for complainant as against defendants Chapin,

but dismissing the bill as to defendant Neff, complainant and defendants Chapin appeal. Affirmed.

*Thomas F. McGarry,* for complainant.

*F. A. Miller* and *William O. Webster,* for defendants Chapin.

*Clute & Clute,* for defendant Neff.

McGRATH, C. J.   Oscar Webber and Clarence W. Chapin had been for many years engaged as partners in banking. They had acquired as such the real estate in question. On the 28th day of December, 1892, they entered into an agreement whereby Webber was to withdraw from the firm, was to receive $6,000, and the new firm of C. W. Chapin & Co., composed of defendant C. W. Chapin and his brother, Merrick W. Chapin, agreed to pay all outstanding indebtedness. On the 17th day of July, 1893, Webber and wife quitclaimed to Alice B. Chapin the lots in controversy. On August 23, 1893, Jacob Neff, a creditor of Webber & Chapin, sued out an attachment, and levied upon the lots so conveyed to Alice B. Chapin, who is the wife of defendant C. W. Chapin. On July 25, 1893, Clarence W. Chapin and Merrick W. Chapin made an assignment to one Gorham, who filed this bill to set aside the deed to Alice B. Chapin as having been made without consideration and in fraud of creditors. Complainant prosecutes as receiver, afterwards appointed.

It is unnecessary to discuss the testimony as to the main question, as we are fully satisfied that at the time of the dissolution of the firm of Webber & Chapin the concern was insolvent, and that the agreement was part of a general scheme to relieve Webber, continue the business, and substitute C. W. Chapin & Co. as debtors. Before the assignment, a number of the creditors of Webber & Chapin had surrendered the evidences of indebtedness which were held by them at the time of the dissolution, and accepted C. W. Chapin & Co. The theory

of the Chapins is that at the time of the dissolution it was agreed that Webber should convey his interest in the lots in question to whomsoever Chapin should direct, and that before the deed was executed he sent to Webber a draft of the deed running to Alice B. Chapin, which Webber and wife executed and returned. It is insisted on behalf of Alice B. Chapin—*First*, that she gave a valid consideration to her husband for the property; and, *second*, that it was the homestead of herself and husband. Alice B. Chapin's claim is that at the time of the conveyance her husband was indebted to her, and that the indebtedness grew out of an agreement on his part, when they began housekeeping, to pay her $250 per year for her services as housekeeper. Such an agreement, if ever made, is contrary to public policy. The promise to pay for services which the very existence of the relation made it her duty to perform was without consideration. Schouler, Dom. Rel. § 43; *Grant* v. *Green*, 41 Iowa, 88. Respecting the homestead claim, C. W. Chapin and family had lived in a house upon the premises for a number of years, but it was nevertheless partnership property, and a homestead interest could not be acquired therein. "The assets of a partnership," as is said in *Hubbardston Lumber Co.* v. *Covert*, 35 Mich. 254, "are held in a sort of community; but the partners do not hold as common tenants or joint tenants. The property is distinctly separated from that belonging to the individual members, and it constitutes an identical and entire interest. * * * As partner there is no power to bind individual interests." *Moran* v. *Palmer*, 13 Mich. 367; *Hutchinson* v. *Dubois*, 45 Mich. 143; *Way* v. *Stebbins*, 47 Mich. 296; *Bishop* v. *Hubbard*, 23 Cal. 514; *Robertshaw* v. *Hanway*, 52 Miss. 713; *Burnside* v. *Merrick*, 4 Metc. (Mass.) 537; *Uhler* v. *Semple*, 20 N. J. Eq. 288.

As to the Neff attachment lien upon the property, Neff is a creditor of Webber & Chapin. He had an undoubted right to follow Webber's interest in the property into the hands of a fraudulent vendee of that property.

The decree of the court below is affirmed, with costs to defendant Jacob Neff.

LONG, GRANT, and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.