## DEMPSTER MILL MANUFACTURING COMPANY v. LAURA J. BUNDY.

**No. 12,570.**  ( 67 Pac. 816.)

### SYLLABUS BY THE COURT.

CONTRACTS — *Husband and Wife — Void as to Creditors.* A contract between husband and wife engaged in farming, that the husband shall work for the wife and act as her agent in what he does, and that, in payment for such personal services, the wife shall work for the husband, and that the product of such joint labor shall be the property of the wife, is without consideration, contrary to public policy, and void, and such contract will not sustain a claim of ownership in the wife of a crop sown, grown and harvested by the husband, as against his creditors.

Error from Decatur district court; A. C. T. GEIGER, judge. Opinion filed February 8, 1902. Reversed.

*Tully Scott*, for plaintiff in error.

*O. O. Osborne*, and *W. S. Langmade*, for defendant in error.

The opinion of the court was delivered by

POLLOCK, J.: This was an action in replevin, brought to recover a crop consisting of wheat, oats and rye in the stack, taken by the sheriff in execution on a judgment in favor of plaintiff in error against E. N. Bundy, husband of defendant in error, plaintiff below. Plaintiff had verdict and judgment, and defendant brings error.

There is no question of exemption involved in this action; the ground of recovery is ownership. The principal contention of error relied on is the insufficiency of the evidence to support the judgment rendered. It appears from the record that a portion of the crop in controversy was grown upon rented land, the remainder upon land of the husband. The land was rented, the crop sown, harvested and stacked by the husband. The claim made is that the personal property on the farm, used by the husband in producing the crop, is the separate property of the wife; that the husband was employed by the wife to work for her, and in payment she performed services for him; that in all the husband did he acted as the agent of the wife. The following is sufficient of the evidence to show the foundation of the claim made by plaintiff. She testified:

"Ques. Where did you get the seed sown in 1898? Ans. It was raised from my '97 crop.

"Q. Where was your '97 crop raised? A. On the place where we live.

"Q. How much of a crop was raised from the

place where you live? A. I believe fifty-six bushels of wheat.

"Q. And then the seed you sowed in 1898 you say was raised on that place where you live? A. No, sir; not in 1898.

"Q. I say the seed sowed in 1898, it was raised in 1897 on that place? A. Yes, I had it put there.

"Q. You had it put there? A. Yes, sir.

"Q. Who did you have put it there? A. Mr. Bundy, for me.

"Q. Going back to the crop you raised this year, what did you have to have to do with the planting or sowing of it? A. I myself individually had nothing. I hired him to do it for me.

"Q. How much did you pay him to put in that crop that year? A. I worked back for him.

"Q. You exchanged works? A. Yes; I carried the mail for him in exchange.

"Q. You carried the mail and he put in your crop on your land or his land? A. I suppose it was his land or our land, as the case might be.

"Q. Did you make a contract with him to carry the mail and he to do the farming? A. Yes, sir.

"Q. That was the contract you had, was it? He was to do the farming and you were to carry the mail? A. When he was working out.

"Q. That was the agreement between you and Bundy? You were simply to swap works? He was to do the farming and you to carry the mail, is that right? That is what you said. A. When he was farming for me I was carrying mail for him.

"Q. That is the agreement and understanding you had, was it? A. Well, we worked for each other.

"Q. Of course you did, and that is the agreement you had—you would work for each other. Now, I want to understand. You employed Mr. Bundy to do this farming in 1898; is that right? A. Yes.

"Q. You hired him, and you say that in consideration of that you carried the mail for him? A. I done his housework, too, and took care of his children.

"Q. That was a part of the contract; you was to do his housework while he put in the crop, was it? A. I should do what I could of his work.

"Q. That was a part of the agreement, you should do the housework, was it? A. Yes, sir."

The husband testified:

"Ques. Who raised this wheat? Ans. Mrs. Bundy raised it.

"Q. Who sowed it personally? A. I did.

"Q. Who plowed the ground? A. It was not plowed.

"Q. Who harvested it? A. I harvested it.

"Q. Who did you rent the land of? A. My wife rented it of Mr. Spring.

"Q. Did Mrs. Bundy rent it or you personally? A. I rented it as her agent.

"Q. Did you have a written lease? A. No, sir.

"Q. Did you tell Mr. Spring you rented it as her agent? A. No, sir.

"Q. Did you mention your wife's name to him when you rented the land? A. No, sir.

"Q. Then you personally rented the land, did n't you? A. I cannot say as I did.

"Q. You personally put in the crop, did n't you? A. I put it in for my wife.

"Q. You personally put it in, did n't you; individually planted that crop, did n't you? A. Yes, I put it in; yes.

"Q. And you harvested it, did n't you? A. Yes, sir.

"Q. Who did the farming on your own place? A. I did it.

"Q. Were you acting as your wife's agent? A. Yes."

Does this testimony support the judgment rendered? Is an agreement between husband and wife that the husband shall work for the wife and in payment for such services the wife shall work for the husband, each engaged in the usual and ordinary affairs of life,

and that the product of such joint effort shall be the sole property of the wife, founded upon a sufficient consideration and valid in law? If so, the judgment rendered in this case must be upheld. If not, reversal must follow.

Notwithstanding the liberal statutory enactments in this state in modification of the harsh rules of the common law, authorizing and upholding the right of the wife to have, dispose of and enjoy to the fullest extent her separate property without the consent or interference of her husband, and notwithstanding the large and salutary measures of freedom granted a wife in the transaction of business connected with her separate estate, and in the making of contracts with all, even her husband, there are certain contracts between husband and wife which, on grounds of public policy, are, and of right must continue in this and all other jurisdictions to be, interdicted by law. Within this class of contracts falls the one upon which plaintiff bases her claim of. ownership of the property in controversy in this action. It is void for want of consideration and is contrary to public policy. The authorities upon this proposition are a unit and conclusive.

The author of A. & E. Encycl. of L. (2d ed.), volume 15, at page 854, says:

"And notwithstanding the statutes of the various states enabling husband and wife to contract with each other, some specific contracts have been declared to be invalid, either as being without consideration or as being against public policy."

In the case of *Michigan Trust Co. v. Chapin*, 106 Mich. 384, 64 N. W. 334, 58 Am. St. 490, it was held that an agreement by a husband to pay his wife a designated sum for her services as housekeeper is contrary to pub-

lic policy and void. In *Miller v. Miller,* 78 Iowa, 177, 35 N. W. 464, 42 N. W. 641, 16 Am. St. 431, it was held that a contract between husband and wife, by which the wife agrees faithfully to observe and perform the duties imposed upon her by her marital relations and by which the husband agrees to provide the necessary expenses of the family and to pay the wife for her individual use a certain sum annually, in monthly payments, so long as she faithfully keeps the terms and conditions of the contract, is against public policy and void. In *Corcoran v. Corcoran,* 119 Ind. 138, 21 N. E. 468, 4 L. R. A. 782, 12 Am. St. 390, it is held that a contract by a wife, whereby she agrees, in consideration of a conveyance to her of real estate by her husband, to support the latter during his natural life, is void, and the husband cannot maintain an action to recover damages for the breach thereof. In *In the Matter of Callister,* 153 N. Y. 294, 47 N. E. 269, 60 Am. St. 620, it was held that though a woman is serving a man in the capacity of clerk, upon an agreement to pay her annual compensation of $500, such employment to continue as long as he practices law, and such payment not to be made until he retires from business, he, upon their subsequent marriage, becomes entitled to her services without payment. She need not continue serving him as a clerk, but if she does she cannot enforce a promise to pay therefor, however solemnly made.

"The legislation of the state of New York upon the subject of the rights of married women has only resulted in abrogating their common-law status to the extent set forth in the various statutes. They have not, by express provision nor by implication, deprived him of his common-law right to avail himself of a profit or benefit from her services." (Id.)

29—64 K A N

In a note to *Michigan Trust Co. v. Chapin*, supra, found in 58 Am. St. Rep. 490, 64 N. W. 334, it was said :

"If the services performed by the wife for which her husband agreed to pay her were in the nature of ordinary marital or household d⋅ies, of course his agreement to pay for them was not binding upon him because without consideration, and his compliance with it must be deemed a mere gift to his wife, not sustainable as against his creditors, except as under the same conditions as would permit the sustaining of any other voluntary transfer by him, and therefore his creditors have the right to any property received by her from him in carrying out his agreement that they have to any other property given by him to her." (*Stirtzer v. Kee*, 165 Ill. 577, 35 N. E. 160 ; *Gable v. Columbus etc. Co.*, 140 Ind. 563, 38 N. E. 474 ; *Michigan etc. Co. v. Chapin*, 106 Mich. 384, 64 N. W. 334, 58 Am. St. Rep. 490 ; *Apple v. Ganony*, 47 Miss. 189 ; *Reynolds v. Robinson*, 64 N. Y. 589 ; *Bucher v. Ream*, 68 Pa. St. 421 ; *Campbell v. Bowles*, 30 Gratt. 652 ; *Elliott v. Bentley*, 17 Wis. 591.)

It follows that the claim of plaintiff to the property in controversy, being founded upon a contract prohibited by public policy, and lacking the essential element of consideration, is void as to the creditors of her husband, and, unless other valuable considerations may be shown in support of such contract and her right to the property, no recovery can be had.

The judgment is reversed, and the case remanded for a new trial in accordance with this opinion.

DOSTER, C. J., SMITH, J., concurring.