IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,149

ROYCE WILLIAMS,
*Appellee*,

v.

GEICO GENERAL INSURANCE COMPANY,
*Appellant.*

SYLLABUS BY THE COURT

1.

Personal injury protection "substitution benefits" as defined by K.S.A. 40-3103(w) are allowances for appropriate and reasonable expenses incurred in obtaining other ordinary and necessary services in lieu of those that, but for the injury, an injured person would have performed for the benefit of such person or such person's family. They are subject to a maximum of $25 per day for not longer than 365 days after the date such expenses are incurred.

2.

K.S.A. 40-3103(w) does not exclude reimbursement for substitution benefits when the injured person's spouse provides services subject to reimbursement.

3.

To recover substitution benefits, an injured person must prove genuine economic loss or liability for the expenses incurred. Determining whether the injured person establishes genuine economic loss or liability is a case-by-case analysis.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 2, 2018. Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed January 21, 2020. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Nathaniel T. Martens*, of the same firm, was with him on the briefs for appellant.

*Theodore C. Davis*, of DeVaughn James Injury Lawyers, of Wichita, argued the cause, and *Kathryn A. Wright* and *Richard W. James*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: The issue here is whether an insurance company owes personal injury protection "substitution benefits" to a person injured in a motor vehicle accident for ordinary and necessary services—such as household-related help or personal care—when furnished by the injured person's spouse. The parties concede reimbursement would be required had the same services been provided by anyone else. A Court of Appeals panel held the insurance company did not have to pay because the wife's obligation to help her husband "was incurred as a result of the marital relationship itself." *Williams v. GEICO General Ins. Co.*, No. 117,149, 2018 WL 683730, at *4 (Kan. App. 2018) (unpublished opinion). We reverse the panel because the statutory definition of substitution benefits makes no such distinction. The district court's award is reinstated.

FACTUAL AND PROCEDURAL BACKGROUND

GEICO General Insurance Company insured Royce Williams when he was injured in an automobile collision. Williams went through surgery and required physical rehabilitation. His physician determined he was "disabled and unable to perform his regular duties at home and needed to have a caregiver provide such duties." The doctor

2

specified that Williams could not do yard work, shovel snow, wash dishes, clean the bathroom, dust, take out the trash, or clean his vehicle and that he could only prepare meals if sitting down.

All agree that before the automobile collision, Williams and his wife, Mary, lived together but maintained separate finances and work schedules. Williams generally cooked his own meals, did his own laundry, drove himself, took care of his personal hygiene, did his own shopping, and administered his medication himself.

When Williams returned from the rehabilitation hospital, he and Mary agreed she would provide regular caregiver duties for $25 per day. These services included assistance with meal preparation, personal hygiene and bathing, laundry, administering medication, and driving. From December 18, 2015, through March 31, 2016, Mary spent up to five hours a day doing this. She kept detailed itemizations of her services. She indicated she often had to be absent from work during this time.

Williams sought payment for all personal injury protection (PIP) substitution benefits available to him under his policy. GEICO refused and litigation ensued. Their dispute needs some brief background about automobile insurance coverage for a better understanding.

Among other provisions, the Kansas Automobile Injury Reparations Act, K.S.A. 40-3101 et seq., commonly called the no-fault insurance law, requires every Kansas automobile liability insurance policy to include statutorily specified PIP benefits to the insured and certain other persons. K.S.A. 40-3107(f); see K.S.A. 40-3103(q) (defining PIP benefits). This coverage includes "substitution benefits," defined as

"allowances for appropriate and reasonable expenses incurred in obtaining other ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed for the benefit of such person or such person's family, subject to a maximum of $25 per day for not longer than 365 days after the date such expenses are incurred." K.S.A. 40-3103(w).

In the district court, Williams sought $2,625 in substitution benefits for Mary's services, plus attorney fees and expenses related to the litigation. GEICO denied liability, arguing Mary had a legal obligation imbued from the marital relationship to provide replacement services to her husband. Each party moved for summary judgment based on what they claimed was K.S.A. 40-3103(w)'s proper interpretation from the undisputed facts.

The district court granted judgment for Williams, reasoning the statute does not exclude an injured person's spouse from providing substitution services. It denied his request for attorney fees and expenses. GEICO appealed from the judgment against it awarding Williams substitution benefits. Williams did not cross-appeal the remaining rulings adverse to him, so they are no longer issues. See *Lumry v. State*, 305 Kan. 545, 553-54, 385 P.3d 479 (2016) (appellee abandons opportunity to challenge district court's adverse ruling on the issue by failing to cross-appeal); K.S.A. 2018 Supp. 60-2103(h) (appellate procedure; cross-appeal).

A Court of Appeals panel held the district court erred when interpreting the statute. It agreed with GEICO that married persons, unlike other family members, cannot be a provider or recipient of substitution services to each other. *Williams*, 2018 WL 683730, at *3. The panel relied on *Hephner v. Traders Ins. Co.*, 254 Kan. 226, 864 P.2d 674 (1993), as well as Kansas probate law, criminal law, and the common-law doctrine of necessaries. 2018 WL 683730, at *3-4.

4

The panel reasoned that Mary's duty to assist Williams arose from their marital relationship, so he incurred no economic obligation to reimburse his wife for her care and support arising from his automobile accident. And although the panel acknowledged K.S.A. 40-3103(w) does not expressly exclude a spouse from being an eligible service performer, it believed the Legislature did not intend to "implement a fundamental modification of the concept of mutual marital support obligations in the context of the omission of any such reference in an automobile insurance statute." 2018 WL 683730, at *4. In explaining this rationale, the panel stated:

> "[C]ommon law and societal mores have traditionally considered the marital relationship as a distinct and special category apart from the generic 'family' relationship. Marriage has traditionally and legally been determined to create a partnership of mutual benefits and obligations, not the least of which is the mutual obligation to provide support for each other. The thread of this mutual support obligation is woven through our statutory and common-law jurisprudence. The continuing support obligation lies at the heart of our civil laws governing domestic relations. Our Supreme Court has recognized that under Kansas probate law, a spouse's right to an elective share of a deceased spouse's estate is premised in part on the mutual duties of support which spouses owe, which survives even after death. The criminal laws set forth yet another reflection of this mutual duty—it is undisputed that a person may be charged under K.S.A. 2016 Supp. 21-5606(a) for criminal nonsupport of a child *or spouse* in necessitous circumstances. [Citations omitted.]" 2018 WL 683730, at *3.

In a separate concurrence, Judge Kim Schroeder agreed the statute and Kansas caselaw required denying payment, but he wrote to emphasize the inequity this creates. He called on the Legislature to amend the statute specifically to allow services rendered by a spouse. 2018 WL 683730, at *4-5 (Schroeder, J., concurring). He pointed out:

5

"After the accident, Mary provided these services and had Royce and Mary merely been cohabitating, Royce would have been entitled to substitution benefits for the services Mary provided. Since Royce and Mary are married, however, he is not entitled to substitution benefits. This creates an inequitable situation which actually punishes a couple for marrying instead of merely cohabitating. If the Legislature amended K.S.A. 40-3103(w) to allow substitution benefits for services rendered by a spouse, this inequity would disappear.

"Further, I note amending K.S.A. 40-3103(w) to specifically allow substitution benefits for services rendered by a spouse would ease the financial burden on poorer Kansans whose spouse is injured in an automobile accident. As the law now stands, poorer Kansans may not be able to hire someone to provide ordinary and necessary services for an injured spouse and, as a result, the healthy spouse is hit with a double-whammy of financial hardship: being forced to take time off of work to care for their spouse and not being compensated for their care." 2018 WL 683730, at *5 (Schroeder, J., concurring).

This court granted Williams' petition for review. Jurisdiction is proper. K.S.A. 20-3018(b) (petitions for review of Court of Appeals decision); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

Our focus is on the statutory term "incurred" as used in K.S.A. 40-3103(w), which declares "'[s]ubstitution benefits' means allowances for appropriate and reasonable expense *incurred* in obtaining other ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed for the benefit of such person or such person's family . . . ." (Emphasis added.) The parties agree no material facts are in dispute, so we apply a de novo standard of review to this question of statutory interpretation. See *Nauheim v. City of Topeka*, 309 Kan. 145, 149-50, 432 P.3d 647 (2019); *Polson v. Farmers Ins. Co.*, 288 Kan. 165, 168, 200 P.3d 1266 (2009).

6

The panel mainly relied on *Hephner*—the sole case from this court dealing with substitution services provided by family members—and held the requirement for the expense to be "incurred" inevitably precludes a spouse from being a paid service performer. *Williams*, 2018 WL 683730, at *2, 4. *Hephner* involved a claim for services by grandparents for their disabled granddaughter, whose mother died in an automobile accident. Two points the court discussed are relevant to Williams' case: (1) Whether reimbursement may be had for services provided by family members, and (2) whether the granddaughter had shown the "genuine economic loss" necessary to obtain substitution benefits. *Hephner*, 254 Kan. at 227-28, 230.

As to the first point, the *Hephner* court held compensation for substitution services provided by family members was available because the no-fault insurance law places "no limitation on recovery merely because the services were provided by a relative of the insured or survivor," so the reimbursement would be available as long as the granddaughter "actually incurred expenses or liability for expenses in obtaining the services." 254 Kan. at 231-32.

As to whether the granddaughter had made that required showing, the *Hephner* court noted substitution benefits are only recoverable when there has been proof of "genuine economic loss." 254 Kan. at 229-30; cf. *ZCD Transp. v. State Farm Ins.*, 299 Mich. App. 336, 342, 830 N.W.2d 428 (2012) ("An expense is incurred when the insured becomes liable to pay. . . . There must at least be evidence that the service provider expected compensation for its services."). The court expressly held that even though the grandfather admitted he would not try to collect from his granddaughter unless she recovered benefits under the policy, there was sufficient evidence establishing genuine economic loss. 254 Kan. at 234.

7

The *Williams* panel read *Hephner* to exclude recovery for Mary's services. It reasoned the *Hephner* court placed "repeated emphasis on the lack of legal duty or obligation on the part of the family members" in holding the granddaughter incurred expenses for the grandparents' services. In the panel's view, that factor's absence in Williams' case was a dispositive distinction. *Williams*, 2018 WL 683730, at *3. But, while the grandparents' lack of legal duty to act as "a primary child-care provider" was part of its analysis, *Hephner* made clear that whether the person seeking reimbursement proves liability for expenses incurred and the existence of genuine economic loss is a case-by-case determination. See 254 Kan. at 232-34.

The *Williams* panel overemphasized what was just one factor in the *Hephner* court's analysis. The *Williams* panel identified various authorities sketching out a general obligation existing between spouses to support one another: the common-law doctrine of necessaries, a criminal nonsupport statute, and policy rationale underlying portions of the probate law. *Williams*, 2018 WL 683730, at *3-4; see also K.S.A. 2018 Supp. 21-5606(a)(2) ("Criminal nonsupport is . . . a person's failure, without just cause, to provide for the support of such person's spouse in necessitous circumstances."); *St. Francis Regional Med. Center, Inc. v. Bowles*, 251 Kan. 334, 340-41, 836 P.2d 1123 (1992) (doctrine of necessaries); *In re Estate of Antonopoulos*, 268 Kan. 178, 182-83, 993 P.2d 637 (1999) (discussing purposes of probate code's elective-share provisions, including implementing "support theory," which "recognizes that during their joint lives, spouses owe each other mutual duties of support"]). In the panel's view, these reflected "[t]he thread of [a] mutual support obligation . . . woven through our statutory and common-law jurisprudence," based on which "the obligation of Mary to provide assistance for her husband was incurred as a result of the marital relationship itself." *Williams*, 2018 WL 683730, at *3-4.

8

For its part, GEICO relies on *Dempster v. Bundy*, 64 Kan. 444, 67 P. 816 (1902), in its effort to bolster the panel's holding. In *Dempster*, a creditor tried to collect a debt owed by a husband by executing on his crop. The husband insisted the crop was not his and belonged to his wife under a contract the pair entered into, under which he farmed as his wife's employee. In payment, he contended, his wife agreed to provide work, consisting of "carr[ying] the mail for him" and doing "his housework . . . and [taking] care of his children." 64 Kan. at 446. The narrow question addressed in *Dempster* was whether a valid contract sprang from "an agreement between husband and wife that the husband shall work for the wife, and in payment for such services the wife shall work for the husband, each engaged in the usual and ordinary affairs of life." 64 Kan. at 447. The court held this type of contract was void for lack of consideration and contrary to public policy. 64 Kan. at 450.

But *Dempster* does not describe the contract before us. Williams does not try to cast his spouse's ordinary performance of her household role in their marriage as consideration for a contract. And the undisputed facts show otherwise. One specific passage in *Dempster* highlights our distinction and deserves mention:

> "In *In the Matter of Callister*, 153 N.Y. 294, 47 N.E. 269, 60 Am. St. 620, it was held that though a woman is serving a man in the capacity of clerk, upon an agreement to pay her annual compensation of $500, such employment to continue as long as he practices law, and such payment not to be made until he retires from business, he, upon their subsequent marriage, becomes entitled to her services without payment. She need not continue serving him as a clerk, but if she does she cannot enforce a promise to pay therefor, however solemnly made.
>
> "'The legislation of the state of New York upon the subject of the rights of married women has only resulted in abrogating their common-law status to the extent set forth in the various statutes. They have not, by express provision nor by implication,

9

deprived him of his common-law right to avail himself of a profit or benefit from her services.' [Citation omitted.]" 64 Kan. at 449.

We do not see this passage as accurately reflecting the law of this state. In Kansas,

"Any married person may carry on any trade or business, and perform any labor or services, on his or her sole and separate account; and the earnings of any married person from his or her trade, business, labor or services shall be his or her sole and separate property, and may be used and invested by him or her in his or her own name." K.S.A. 2018 Supp. 23-2604.

At least one other jurisdiction has construed a similar statute as permitting spouses to contract with one another as to their separate estates. See, e.g., *Perkins v. Blethen*, 107 Me. 443, 78 A. 574, 575 (1911) ("Rev. St. c. 63, § 1, gives to a married woman certain powers over her separate estate which cannot be reconciled with the common-law status of husband and wife."). And another has judicially abrogated its common-law rule declaring contracts-for-hire between spouses unenforceable. In *Romeo v. Romeo*, 84 N.J. 289, 298, 418 A.2d 258 (1980), the New Jersey Supreme Court noted the rule against interspousal contracts was "'artificial and technical'" and eroded by modern judicial decisions, e.g., abolishing interspousal immunity in personal injury actions, and New Jersey statutes much like K.S.A. 2018 Supp. 23-2604 conferring upon spouses the right to own property and contract independently.

To determine whether Williams is entitled to substitution benefits for the amount he promised to pay Mary for what she did for him, our inquiry is whether he has incurred an obligation to pay her. And as noted previously, K.S.A. 40-3103(w) does not expressly preclude Mary from providing substitution services simply because of her marital relationship with Williams, so we must turn to the undisputed facts presented by Williams that his obligation to pay was incurred.

10

Here, the facts establish Williams incurred an obligation to pay Mary by entering into a contract with her to perform specific services for him that she would not have otherwise performed, while he convalesced. And as the district court noted, the underlying facts were uncontroverted: (1) before the accident, Williams prepared his own meals, did his own laundry, drove himself, took care of his own hygiene needs, did his own shopping, and administered his own medication; (2) those were the services rendered by Mary in return for Williams' promise to pay her $25 per day; (3) had he not suffered bodily harm, he would have performed those services for himself, but his physician ordered him to have a caregiver to do them for him; and (4) from December 18, 2015, through March 31, 2016, Mary spent up to five hours a day providing these services and kept detailed itemizations documenting the services furnished. Adding to those facts is the undisputed recognition that payment would be owed under K.S.A. 40-3103(w) if someone other than Mary had rendered the same services.

Under different facts, the spouses' mutual support obligations might prevent claiming the existence of an obligation to pay a spouse for substitution services. *Hephner* teaches that the analysis must be fact-driven and turns on the circumstances—including the nature of the services alleged to have been provided in exchange for payment—in any given case. See *Dempster*, 64 Kan. at 448 (indicating not all interspousal contracts are void but some are, such as the one at issue).

We hold Williams is entitled to PIP substitution benefits for what Mary did, which unquestionably resulted from the automobile accident, because he proved genuine economic loss or liability for expenses incurred. The district court correctly entered judgment in Williams' favor for $2,625 in PIP substitution benefits.

11

The judgment of the Court of Appeals is reversed; the judgment of the district court is affirmed.

LUCKERT, C.J., not participating.

BARBARA KAY HUFF, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Huff was appointed to hear case No. 117,149 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.